**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| DUNCAN SERVICES, INC., *et al.*, | * |
| Plaintiffs, | * |
| v. | *  Civil Action No. AW-09-2486 |
| EXXONMOBIL OIL CORPORATION, *et al.*, | * |
| Defendants. | * |

**MEMORANDUM OPINION**

Sixty-five[1] ExxonMobil motor fuel franchisees who individually, or on behalf of entities they control, operate at least one retail service station in Maryland, bring this action against Defendants ExxonMobil Oil Corporation ("ExxonMobil"), ExxonMobil's affiliate ExxonMobil Corporation, White Oak Petroleum, LLC ("White Oak"), and GTY MD Leasing, Inc. Plaintiffs assert violations of the Petroleum Marketing Practices Act, 58 U.S.C. §§ 2801-2806 (the "PMPA"), and breach of contract. Of these sixty-five Plaintiffs, thirteen[2] are "White Oak Transaction Plaintiffs," whose franchises ExxonMobil has assigned to White Oak, and fifty-two are "Non-White Oak Transaction Plaintiffs," whose franchises ExxonMobil still owns. Per stipulations of the parties on September 30 (Docket No. 9) and October 15 (Docket No. 28), the Motions now pending before the Court only pertain to the Non-White Oak Transaction Plaintiffs. Currently pending before the Court are Defendants' Motion to Dismiss the Unassigned Plaintiffs' Claims in Plaintiffs' Second Amended Complaint (Counts I & II) (Docket No. 33),

---

[1] A total of sixty-five franchisees are listed in the Second Amended Complaint, though there are more stations at issue since some franchisees own multiple stations. At the October 26, 2009 hearing Defendants stated that there were sixty-seven Plaintiffs.

[2] According to Defendants' Opposition to Preliminary Injunction, there are twelve White Oak Transaction Plaintiffs and forty-six Non-White Oak Transaction Plaintiffs. At the October 26, 2009 hearing Defendants stated that there were twelve Non-White Oak Transaction Plaintiffs and fifty-five White Oak Transaction Plaintiffs.

and Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Docket No. 4). The Court has reviewed the entire record with respect to the instant Motions. The issues have been briefed, and this Court held a hearing on the motions on October 26, 2009. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated below, the Court will GRANT Defendants' Motion to Dismiss the Unassigned Plaintiffs' Claims in Plaintiffs' Second Amended Complaint and DENY Plaintiffs' Motion for Preliminary Injunction.

## I. FACTUAL BACKGROUND

The sixty-five Plaintiffs are operators, also known as dealers, of ExxonMobil retail service stations in Maryland and have franchise agreements with motor fuel refiner ExxonMobil. These franchise agreements, which are standard ExxonMobil form agreements, vest ExxonMobil with discretion over various aspects of the operation of the franchise, and include an "open price term" allowing ExxonMobil to determine how much the dealer must pay for fuel. ExxonMobil distributes about twenty-five percent of its fuel nationwide through such retail dealers, and distributes the other seventy-five percent through non-refiner wholesalers, also known as distributors, who then sell the fuel to dealers. These distributors generally operate under multiple brands and have distribution agreements with multiple refiners.

In June 2008, in a nationwide conference call, ExxonMobil informed its dealers it intended to divest all of its retail station holdings, and transition to distribution of fuel strictly through distributors. This method is now standard industry practice exercised by the other major refiners. In December 2008, ExxonMobil agreed to assign several of its franchises in Maryland, Virginia, and Washington, D.C. to non-refiner distributor DAG Petroleum, LLC ("DAG"). Per this arrangement, ExxonMobil assigned about thirty franchises in Washington, D.C. and two in

Maryland to Anacostia Realty, LLC, a DAG affiliate, in June 2009; and assigned about thirty franchises in Virginia to Mount Vernon Realty, LLC, another DAG affiliate, in August 2009.

Plaintiffs filed this Complaint against Defendants on September 22, 2009, believing ExxonMobil would soon assign their franchises. Three days later, on September 25, 2009, ExxonMobil transferred thirty-six Maryland franchises, most of them in Prince George's County, to Defendant White Oak Petroleum, LLC, a third DAG affiliate. (Docket No. 23). On the afternoon of Friday, September 25, 2009, the White Oak Transaction Plaintiffs received an electronic notification from ExxonMobil asking them to participate that day at 4 p.m. in a teleconference update on ExxonMobil's U.S. retail business. At this conference, ExxonMobil informed White Oak Transaction Plaintiffs that their franchises had been sold to White Oak. ExxonMobil had refused to sell the franchises to the dealers operating them. White Oak then sold these properties to Defendant Getty, a newly formed Delaware Corporation, which leased the properties back to White Oak. Plaintiffs allege ExxonMobil plans to assign all of its Maryland stations to one or more non-refiners in transactions similar to that involving White Oak.

According to Plaintiffs, ExxonMobil then stopped providing motor fuel to White Oak Transaction Plaintiffs and barred them from the ExxonMobil website portal and interactive telephone system from which dealers gain critical information regarding fuel prices. Additionally, Plaintiffs allege White Oak has deviated from the franchise agreements by, for example, materially increasing the price of motor fuel from what ExxonMobil charged. (Docket No. 25 at 32). Defendants, on the other hand, contend that the franchise arrangements remain the same--DAG franchisees use the ExxonMobil trademarks, use ExxonMobil-branded fuel, and lease the service stations at the same price. (Docket No. 23 at 5).

Plaintiffs argue that assignment of dealers' properties from refiners to wholesalers can often result in dealers going out of business or the wholesalers taking control of the stations. Several years ago when DAG acquired another refiner's stations in Washington D.C., multiple dealers went out of business, (Docket No. 29 at 25), and in Maryland when refiners Motiva Enterprises, LLC and BP Products North America, Inc. assigned properties to distributors SMO, Inc. and Eastern Petroleum Corporation, some dealers also lost control over their stations.

This phenomenon is a distinct possibility in Maryland, because its divorcement laws preclude refiners, but not distributors, from operating retail outlets. As a result, dealers in Maryland never compete with refiners for retail business, though they may compete with non-refiner distributors. (Docket No. 29 at 23). Maryland passed the Divorcement law, Md. Bus. Reg. Code Ann. § 10-311(a), in response to a study indicating that refiners had given refiner-operated stations preferential treatment in gasoline distribution during the 1973 oil shortage. *See Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 121 (U.S. 1978) (citing *Governor of Md. v. Exxon Corp.*, 279 Md. 410 (Md. 1977)) (holding Maryland Divorcement law did not violate the Due Process Clause, the Commerce Clause, and was not preempted by federal statutes).

Plaintiffs brought this case against Defendants on September 22, 2009, and amended their Complaint, adding more Plaintiffs and a Defendant, on October 15, 2009. Non-White Oak Transaction Plaintiffs claim ExxonMobil has willfully violated Title I of the PMPA, 15 U.S.C. § 2801-2806 because the "imminent" assignment of the franchise agreements to non-refiners will terminate the franchises, and anticipatorily not renew the franchises, without proper grounds or notice (Count 1). All Plaintiffs claim ExxonMobil breached the franchise agreements through the transfer of franchises to White Oak or "imminent" transfer of franchises (Count 2). (Docket No.

4

29 at 32). The White Oak Transaction Plaintiffs claim ExxonMobil's assignment of their station properties to White Oak on September 25, 2009, without notice, and ExxonMobil's subsequent refusal to supply them with motor fuel or to recognize any continued relationship, violates various parts of the PMPA, including Plaintiffs' rights under 15 U.S.C. § 2802(b)(3)(D) (Count 3). Finally, White Oak Transaction Plaintiffs contend it would be inequitable for White Oak and Getty to retain the franchises, and request the Court place a constructive trust upon those station properties for Plaintiffs' benefit (Count 4).

On September 28, 2009, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction to prevent ExxonMobil from transferring more franchises and to nullify those transfers that had already occurred. On September 30, 2009, the parties stipulated they would maintain the status quo during litigation and that the White Oak Transaction Plaintiffs would withdraw as moot, but without prejudice, their request for a preliminary injunction. (Docket No. 9). On October 16, 2009, Defendant ExxonMobil filed a Motion to Dismiss the Unassigned Plaintiffs' Claims in Plaintiffs' Second Amended Complaint (Counts I & II) (Docket No. 33).

## II. ANALYSIS

### A. MOTION TO DISMISS NON-WHITE OAK TRANSACTION PLAINTIFFS' CLAIMS

#### 1) Standard of Review

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S.

506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In two recent cases, the United States Supreme Court clarified the standard applicable to Rule 12(b)(6) motions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Those cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (2007). That showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In its determination, the Court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In addressing a motion to dismiss, a court should first review a complaint to determine what pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949-50. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Indeed, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Id.* at 1954. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

### 2) <u>**Count 1: PMPA violation**</u>

The PMPA "regulates the relationship between motor fuel distributors, principally oil refiners, and their franchisees, principally retail gas station operators," and was passed in response to evidence that "distributors had been using the threat of termination or nonrenewal to compel franchisees to comply with the distributor's marketing policies." *Patel v. Sun Co.*, 63 F.3d 248, 250 (3d Cir. 1995) (citations omitted). "In order to effectuate these purposes, the PMPA prohibits distributors from terminating or nonrenewing franchises, unless the termination or nonrenewal is based upon one of the enumerated grounds set forth in the statute." *Patel*, 63 F.3d at 251 (citations omitted).

To access any relief, a franchisee "shall have the burden of proving the termination of the franchise or the nonrenewal of the franchise relationship." 18 U.S.C.S. § 2805(c). To make the required showing of termination or nonrenewal of the franchise relationship, a franchisee can show either actual or constructive termination. "By and large, the courts have held that in most circumstances, the assignment of a franchise to a distributor will not rise to the level of a termination or nonrenewal so long as the essential characteristics of the franchise remain intact." *Beachler v. Amoco Oil Co.*, 112 F.3d 902, 907 (7th Cir. 1997) (citations omitted). Assignment can constitute constructive termination or nonrenewal, however, when the assignment is invalid under state law, or when the assignment "results in a breach of one of the three statutory components of the franchise." *Korangy v. Mobil Oil Corp.*, 84 F. Supp. 2d 660, 665 (D. Md. 2000) (citations omitted).

An assignment that is invalid under state law amounts to a constructive termination "because the PMPA itself neither authorizes nor prohibits the transfer or assignment of a

franchise, but leaves the matter to state law. If an assignment is found to be invalid under state law, it will necessarily result in a termination of the franchise that is prohibited by the Act." *Beachler*, 112 F.3d at 907 (citations omitted). Accordingly, an assignment is invalid if it violates Maryland law, which generally treats contracts as freely assignable " (1) 'unless otherwise agreed,' or (2) except when 'the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on him by his contract, or impair materially his chance of obtaining return performance.'" *Korangy*, 84 F. Supp. 2d at 665 (citing Md. Code Ann., Com. Law I § 2-210(1)-(2)).

If an assignment results in a violation of a statutory element of a franchise, it is invalid. The three statutory components of a franchise are "the contract to use the refiner's trademark, the contract for the supply of motor fuel, [and] the lease of the premises." *May-Som Gulf, Inc. v. Chevron U.S.A., Inc.*, 869 F.2d 917, 921 (6th Cir. Ohio 1989). "If one of the three components is lost to the franchisee by virtue of the assignment, an essential characteristic of a PMPA franchise is then absent, meaning that the assignment will be deemed a termination of the franchise under the Act." *Beachler*, 112 F.3d at 907.

Defendants move the Court to dismiss the Non-White Oak Transaction Plaintiffs' claim that Defendants violated the PMPA by terminating their franchises without proper grounds or notice. Defendants argue that because the Non-White Oak Transaction Plaintiffs base their Complaint on a *potential* assignment, they cannot establish the threshold requirement for stating a PMPA claim--that their franchises were terminated or non-renewed. 15 U.S.C. § 2805(c). To support their argument that the Non-White Oak Plaintiffs' Complaint is premature, Defendants note that no court has ever granted relief under the PMPA on the basis of an anticipated franchise

assignment. Moreover, Defendants contend, the two Circuit courts that have adjudicated upon claims that potential assignments violated the PMPA have both summarily rejected that argument. *See Fresher v. Shell Oil Co.*, 846 F.2d 45, 46 (9th Cir. 1988); *Beachler v. Amoco Oil Co.*, 112 F.3d 902, 908 (7th Cir. 1997). Nor can a potential assignment constitute anticipatory nonrenewal, according to Defendants, as courts only find nonrenewal where at least notice of nonrenewal is given.

Plaintiffs contend that Congress intended the PMPA to address "threats of termination or nonrenewal," and that the PMPA protects Plaintiffs not only where they have actual notice of termination, but where they have grounds to believe termination is imminent. (Docket No. 37).[3] Plaintiffs allege that the experience of the White Oak Transaction Plaintiffs provides proof of the injury Non-White Oak Transaction Plaintiffs will suffer. That evidence, combined with ExxonMobil's undisputed intent to eventually divest its retail holdings, amounts to constructive assignment, which in turn is sufficient as proof of constructive termination, according to Plaintiffs.

No courts have directly adjudicated upon the question of whether anything short of notice or actual changes in the franchise relationship can constitute constructive termination under the PMPA. Plaintiffs rely on cases where courts found constructive terminations based on violations of the statutory definition of franchise alone, *see infra* p. 12, and on cases where assignment or notice of assignment has already occurred. *See Barnes v. Gulf Oil Corp.*, 795 F.2d 358, 360 (4th

---

[3] Plaintiffs contend that if the Court does not take action here, the statutory framework of the PMPA would be undermined since Defendants could escape liability for violations of the PMPA completely, by giving notice of termination, and then waiting ninety days to execute it, as courts are only required to take action under the PMPA for ninety days after Plaintiffs receive notice of termination or nonrenewal. 15 U.S.C. §2805(b)(4)(A) (court "need not exercise its equitable powers if the action is filed more than 90 days after the date on which" notification of termination was given"). But, the statute is not applicable in this case, as the refiner must give actual notice to toll the ninety-day time period, and ExxonMobil has not given actual notice of termination.

Cir. 1986) ("*Barnes I*") (holding there was constructive termination where assignment had occurred and franchisor raised fuel prices causing plaintiff to lose a significant portion of her profit); *Patel v. Sun Co.*, 63 F.3d 248, 250 (3d Cir. 1995) (expressing sympathy for plaintiffs whose franchises had been assigned, but to whom the district court had denied injunctive relief on the ground that they had not shown constructive nonrenewal). Even the two main cases the Defendants rely upon involve plaintiffs who have already received notice of assignment. *See Beachler v. Amoco Oil Co.*, 112 F.3d 902, 909 (7th Cir. 1997) (holding plaintiffs, who had been notified orally and in writing of Amoco's proposed assignment of their franchise, failed to show the proposed assignments amounted to constructive termination); *Fresher v. Shell Oil Co.*, 846 F.2d 45, 46 (9th Cir. Or. 1988) (holding district court was correct to find dealers who had received notice that their franchises would be assigned to Pacific Northern Oil Corporation failed to show resulting violations of the statutory definition of franchise, and deeming their action premature). No court has found a Plaintiff to have met its burden of showing constructive termination based on assignment, absent notice of assignment or actual assignment. This Court likewise declines to do so.

Because assignments are generally not constructive terminations unless they are invalid under state law or violate one of the three statutory components of a franchise, courts that have found assignments qualified as constructive terminations have generally relied on the type of changes in the franchise relationship that occurred after the transfer. *See, e.g.*, *Barnes I*, 795 F.2d at 360. Given the fact-specific nature of the inquiry into constructive termination, it is impossible for the Court to enter that inquiry absent at least the minimal information of to whom the contracts will be assigned and a definitive statement of intent to assign the franchises. When


there is no indication of the identity of the assignee, it is difficult for the Court to determine whether the assignment is invalid under state law, or whether it results in a breach of one of the three statutory components of a franchise. Without a showing of notice of assignment or actual assignment, the Court cannot determine if the assignment constitutes a constructive termination.

Though, as Plaintiffs state, inferences from discernible business patterns in ExxonMobil's recent assignments in Maryland, Washington, D.C., and Virginia, and ExxonMobil's June 2008 announcement of its intent to divest its retail holdings, indicate that Plaintiffs' franchises are likely to be assigned to a non-refiner, potential transfer to an anonymous non-refiner cannot automatically constitute constructive termination.[4] Plaintiffs ask the Court to assume the assignee will be similar to White Oak, but give insufficient basis and no legal precedent for the Court to do so. The Court cannot assume White Oak will be the next assignee of the Non-White Oak Transaction Plaintiffs' franchises. ExxonMobil and DAG representatives characterize the White Oak Transaction as the "final" transaction in their affidavits, and at the October 26 hearing, ExxonMobil's counsel stated ExxonMobil had completed its planned assignments to White Oak. Consequently, the unspecified plans for future transfer are too broad to constitute notice of termination under the PMPA.

Plaintiffs also rely heavily on various cases where courts found constructive termination where franchisors had not assigned the franchises but had taken other action that resulted in violations of the statutory definition of franchise. But in these cases, the injuries the courts found sufficient to constitute constructive termination had already occurred. In *Fairlane Car Wash, Inc. v. Knight Enters.*, the plaintiffs showed the franchisor had suspended fuel delivery. 2008 U.S.

---

[4] At the hearing, Plaintiffs indicated they suspected that ExxonMobil would be willing to stipulate it planned to transfer the franchises to a non-refiner, but even this level of specificity would be insufficient.

Dist. LEXIS 6999, 13-12 ( E.D. Mich. Jan. 31, 2008) ("Defendant terminated the franchise agreement when it suspended [fuel] deliveries for failure to make timely cash payments."). In *Dean v. Kerr-McGee Refining Corp.*, the plaintiffs showed the franchisor increased rent and "the new rental terms imposed by the defendant pursuant to its franchise agreements with plaintiffs were in violation of the PMPA…even though [Plaintiffs] accepted those terms." 714 F. Supp. 1155, 1158 (W.D. Okla. 1988). Both of these informative cases are easily distinguished from the present scenario as they both involved actual changes in the franchise relationship. Of course, franchisors' actions that violate the statutory definition of franchise can be sufficient to show termination. Here, Plaintiffs have not shown any change in the franchise relationship, but instead ask the Court to infer a change from experiences of similarly situated dealers. As stated above, Plaintiffs have not alleged a sufficient basis for the Court to assume Non-White Oak Transaction Plaintiffs' injuries will mirror the White Oak Plaintiffs' asserted injuries. No courts have made such an inference, and this Court will not be the first to do so.[5]

The Court recognizes that the Non-White Oak Plaintiffs intentionally secured ExxonMobil's promise to maintain the status quo pending the litigation, and chose to pursue this case before the anticipated transactions occurred. The resulting stipulation the parties entered into was approved by the Court. But, the threshold requirements for making a claim under the PMPA remain the same, regardless of this stipulation.

Plaintiffs can only assert what they believe is an imminent assignment and what they believe ExxonMobil will soon do, all of which is utter speculation as to what may happen. None

---

[5] Moreover, as both parties note, the Supreme Court has granted certiorari on the question of whether a Plaintiff can allege constructive termination of a franchise when it continues to operate with the statutory elements of the franchise satisfied. *See Marcoux v. Shell Oil Prods. Co. LLC*, 524 F.3d 33, 48 (1st Cir. 2008) *cert. granted*, *Mac's Shell*, 129 S. Ct. 2788.

of this speculation is sufficient to allow the Court to conclude that the franchises have been constructively terminated. In the absence of Plaintiffs' receipt of actual notice of an impending transfer, including, amongst other information, the identity of the assignee and the terms of the sale, the court cannot find a PMPA violation as to the Non-White Oak Transaction Plaintiffs in this case. Plaintiffs have an insufficient basis for alleging a constructive termination of the franchise. Therefore, the Non-White Oak Transaction Plaintiffs cannot currently bring a claim under the PMPA.

### 3)   Count 2: Breach of Contract Claim

Defendants move the Court to dismiss the Non-White Oak Transaction Plaintiffs' claim that ExxonMobil's potential assignment violates Maryland contract law, because ExxonMobil could not possibly have violated the franchise agreements yet as it has not assigned the franchises or given notice of future assignment. Without alleging an actual breach, Plaintiffs cannot make out a claim of breach of contract, according to Defendants. Furthermore, Defendants argue, a franchise assignment would not breach any contractual provisions of the franchise agreements as those agreements expressly permit ExxonMobil to assign the franchises to any entity, including non-refiners.

The Non-White Oak Transaction Plaintiffs claim that in addition to preliminary injunctive relief, they are seeking a declaratory judgment before the breach occurs so that the parties avoid potential damage. They assert the imminent assignments will materially alter the risks and obligations of the parties in a variety of ways, in violation of the Maryland Uniform Commercial Code, Md. Comm. Law Code Ann. § 2-210(2). This assignment is void under Maryland law, they argue, regardless of the franchise agreements' free assignment provision.

The Court will dismiss Non-White Oak Transaction Plaintiffs' contract violation claim as the Non-White Oak Transaction Plaintiffs do not make the necessary threshold showing that a breach has occurred. *See Weiss v. Sheet Metal Fabricators, Inc.*, 206 Md. 195 (Md. 1955) ("A breach of contract is a failure without legal excuse to perform any promise which forms the whole or part of a contract and may be inferred from the refusal of a party to recognize the existence of a contract, or the doing of something inconsistent with its existence, and when in anticipation of the time of performance, one definitely and specifically refuses to do something which he is obliged to do."). Without an actual assignment, Plaintiffs cannot successfully allege Defendants violated Maryland law.

Additionally, the Court does not believe that Plaintiff has made out a cogent claim for declaratory relief on this record. Therefore, the Court declines to make a declaratory judgment in this case. *See* Md. Courts and Judicial Proceedings Code Ann. § 3-403 (explaining this option is generally within this Court's power: "a court of record within its jurisdiction may declare rights, status, and other legal relations whether or not further relief is or could be claimed").

Because the Plaintiff has not alleged any actual breach, the Court cannot decide the issue of whether ExxonMobil's actual transfer of franchises materially alters the parties' risks and obligations in violation of Maryland law, and whether the franchise agreements' free assignment clause overrides the alteration of the parties' risks and obligations. The Court cannot adjudicate upon that issue until there is an actual contractual breach.

### B. **MOTION FOR PRELIMINARY INJUNCTION**

In light of the Court's dismissal of the Non-White Oak Plaintiffs' claims, the Non-White Oak Plaintiffs' Motion for Preliminary Injunction must be denied.

The PMPA sets out a unique set of factors that a Plaintiff must show to make a successful claim for a preliminary injunction for a violation of the PMPA. A court must grant a preliminary injunction under the PMPA, 15 U.S.C. §2805(b) if:

>   (A) the franchisee shows--
>      (i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and
>      (ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and
>   (B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

15 U.S.C. § 2805(b)

As the Court has dismissed the claims of the Non-White Oak Transaction Plaintiffs, based on their failure to meet the preliminary showing of actual assignment, actual notice, or actual statutory violation necessary to make out a constructive termination claim based on assignment, Plaintiffs cannot show either the termination of the franchise or existence of sufficiently serious questions going to the merits necessary for a Court to grant a preliminary injunction.

### III.    CONCLUSION

For the foregoing reasons, the Court will GRANT Defendants' Motion to Dismiss the Unassigned Plaintiffs' Claims in Plaintiffs' Second Amended Complaint (Counts I & II) (Docket No. 33), and DENY Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Docket No. 4). A separate Order will follow.

   November 6, 2009                                                             /s/
                                                                   Alexander Williams, Jr.
                                                                   United States District Judge