**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division – Greenbelt)**

| | | |
|---|---|---|
| DUNCAN SERVICES, INC., *et al.* | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Civil Action No. 8:09-cv-02486-AW |
| | ) | |
| EXXONMOBIL OIL CORP., *et al.* | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF THE WHITE OAK PETROLEUM LLC'S**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## I.      INTRODUCTION

This action was instituted by a group of Maryland service station dealers against defendants ExxonMobil Oil Corporation and ExxonMobil Corporation (collectively "ExxonMobil"), White Oak Petroleum, LLC ("White Oak") and GTY MD Leasing, Inc. ("Getty"). The original complaint alleged that ExxonMobil's impending sale of its service station properties in the State of Maryland would result in a "constructive termination" of the plaintiffs' franchises under the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, *et seq.* ("PMPA" or the "Act"). The complaint was dismissed by the Court as to all plaintiffs whose service stations were not yet sold, thus limiting the case to certain plaintiffs whose stations were sold by ExxonMobil to White Oak.

White Oak purchased thirty-six stations from ExxonMobil (the "Properties"); it conveyed them to Getty, and it took a lease back for each station. White Oak now serves as the plaintiffs' supplier of Exxon branded motor fuels, and as their lessor. The plaintiffs allege that ExxonMobil violated the PMPA when it sold the Properties to White Oak and when it assigned to White Oak the plaintiffs' franchises.

The only claims asserted against White Oak are common law claims. In substance, the Second Amended Complaint alleges that White Oak and ExxonMobil participated in a civil conspiracy to violate the PMPA, and that the sale and assignment unjustly enriched White Oak in a way that justifies the imposition of a "constructive trust" on White Oak's interest in the Properties.

As shown below, the state law claims asserted against White Oak are preempted by the PMPA. The PMPA contains an express preemption clause that has been interpreted broadly by the Fourth Circuit to preempt all state law that affects termination or nonrenewal. If the sale and assignment at issue do not constitute a "constructive termination" under the PMPA, White Oak cannot be liable for conspiring with ExxonMobil to violate the Act, and White Oak could not have been unjustly enriched. On the other hand, if ExxonMobil violated the PMPA, the only remedies available to plaintiffs are provided by the PMPA. State statutory and common law remedies are unavailable under the Fourth Circuit's broad interpretation of the Act's preemptive reach. Moreover, even in the absence of preemption, it will be established that the Second Amended Complaint fails to state a claim upon which relief can be granted as to either civil conspiracy or unjust enrichment.

For these and other reasons discussed below, White Oak's motion to dismiss should be granted.

## II.    ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

All of the allegations of the Second Amended Complaint arise out of a single transaction. The transaction involves the sale of ExxonMobil's interest in the Properties, and the assignment of plaintiffs' franchises, from ExxonMobil to White Oak. The franchises consist of a lease for

each service station property and a motor fuel supply agreement between ExxonMobil and each plaintiff.

According to the Second Amended Complaint ("2d Am. Cmplt."), ExxonMobil announced to its dealers that it intended to divest all of its retail service station holdings. 2d Am. Cmplt. at ¶22. Pursuant to this plan, ExxonMobil sold certain properties to defendant White Oak, "which in turn sold such properties to Getty and entered into a lease-back arrangement with Getty (another newly formed entity) as described herein." *Id.* at ¶17. As a result of the sale, the plaintiffs' relationship "is now with these newly formed entities." *Id.* at ¶17 and 36-38A.

The Second Amended Complaint describes a classic assignment of franchises from a major refiner to a wholesale distributor of motor fuels, a transaction which plaintiffs characterize as a violation of the PMPA by ExxonMobil:

> 40. ExxonMobil has without grounds or required notification, terminated its franchise and franchise relationship unlawfully with each of the White Oak Transaction Plaintiffs and has further through the sale and transfer of the stations to White Oak Petroleum and Getty, and the transfer of the franchises, anticipatorily non-renewed the franchises and franchise relationships with the White Oak Transaction Plaintiffs . . .

2d Am. Cmplt. at ¶40. According to the complaint, all of plaintiffs' alleged harm and all its losses flow inexorably from the above-described transaction.[1]

In Count 3, however, plaintiffs attempt to impose liability on White Oak and Getty by alleging that they conspired with ExxonMobil "to accomplish an unlawful objective." 2d Am. Cmplt. at ¶38A. By alleging a conspiracy, plaintiffs seek to hold White Oak and Getty accountable for the same events that form the basis for their PMPA claims against ExxonMobil. Put another way, the civil conspiracy allegations are an attempt to hold White Oak and Getty vicariously liable for ExxonMobil's alleged violation of the PMPA.

---

[1] See 2d Am. Cmplt. at ¶¶41-43.

The plaintiffs also seek to tie White Oak and Getty to the alleged "unlawful" transaction by claiming that they were unjustly enriched as a result of the sale and assignment. 2d Am. Cmplt. at ¶¶46-47. In particular, they claim that "[d]efendants acquired their respective interests in the White Oak Transaction stations under circumstances rendering it inequitable for them to retain such interests." *Id.* at ¶46. The complaint alleges that the sale of the stations (which resulted in White Oak acquiring a leasehold interest in the Properties) constitutes unjust enrichment under Maryland law, and that it warrants the imposition of an equitable remedy, namely, a "constructive trust." *Id.* at ¶47.

In short, the complaint asserts common law causes of action against White Oak and Getty (with corresponding common law or equitable remedies), all of which are arise from the same transactions and occurrences that form the basis for plaintiffs' PMPA claims. The sale of the stations and assignment of the franchises allegedly violate the PMPA, result in unjust enrichment to White Oak and Getty, and result in the imposition of vicarious liability on White Oak and Getty on the basis of a common law civil conspiracy.

## III.    ARGUMENT

Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the plaintiff's complaint. In ruling on such a motion, the Court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. U.S.*, 120 F.3d 472, 474 (4th Cir. 1997).

The plaintiff is required to "set forth facts sufficient to allege each element of his claim." *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Bass v. E.I. Dupont De Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) ("a plaintiff is required to allege facts that support a claim for relief."). If the plaintiff fails to state facts supporting each of the requisite elements, dismissal is

appropriate. *Iodice v. United States*, 289 F.3d 270, 280 (4th Cir. 2002) ("[d]ismissal of a complaint for failure to state facts supporting each of the elements of a claim is, of course, proper.").

However, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice to plead a claim." *Walker v. Prince George's County, Maryland,* 575 F.3d 426, 431 (4th Cir. 2009)(citations omitted). "To survive a motion to dismiss, the facts alleged must be enough to raise a right to relief above the speculative level . . ." *Robinson v. American Honda Motor Co.*, 551 F.3d 218, 222. "The court need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions or arguments." *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)(citations omitted). In short, "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion." *Migdal v. Rowe Price-Fleming Intern'l Incorp.*, 248 F.3d 321, 326 (4th Cir. 2001).[2]

In the instant case, the Second Amended Complaint should be dismissed pursuant to Rule 12(b)(6) on two grounds. First, the state law claims alleged by the plaintiffs are preempted by the PMPA. If the transactions are lawful under the PMPA, they cannot be challenged on the basis of state law. To the extent they violate the PMPA, the PMPA provides the exclusive remedies for the noncompliance. Second, even if there were no preemption, the common law claims fail as a matter of Maryland law, and also because the complaint does not adhere to the above-referenced pleading requirements.

---

[2] *See also, e.g., Eastern Shore Markets, Inc. v. J.D. Assoc. Limited Partnership,* 213 F.3d 175, 180 (4th Cir. 2000) (the court "need not accept as true unwarranted inferences, unreasonable conclusions or arguments"); *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009)("the court is not bound by the complaint's legal conclusions..."); *Giarrantano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)("we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments").

### A.      Plaintiffs' Common Law Claims Are Preempted By The PMPA

Section 2802 of the Petroleum Marketing Practices Act sets forth the exclusive grounds upon which a termination of a "franchise," or nonrenewal of a "franchise relationship," may be based. 15 U.S.C. § 2802. Section 2804 of the PMPA sets forth the requirements for notice of termination or nonrenewal. 15 U.S.C. § 2804.

The term "franchise" means, among other things, any contract between a distributor or refiner, as the case may be, and a retailer, such as any of the plaintiffs, under which the retailer is authorized to use a trademark owned or controlled by a refiner in connection with the sale of motor fuel. 15 U.S.C. §2801(1)(A). The lease for a service station property and the motor fuel supply agreement, together, constitute a "franchise."[3] Prior to September 2009, ExxonMobil was the "franchisor,"[4] and the plaintiffs were the "franchisees."[5] 2d Am. Cmplt at ¶¶1, 5, 17, 36-38. On September 25, 2009, the franchise was assigned to White Oak, and White Oak became the franchisor. *Id.* at ¶¶36-38.

The congressional intent underlying the PMPA was the creation of a uniform set of rules governing the grounds for termination of a franchise and non-renewal of a franchise relationship, and the notice which franchisors must provide franchisees prior to termination and nonrenewal.[6] *Consumers Petroleum Co. v. Texaco, Inc.*, 804 F.2d 907, 915 (6th Cir. 1986) (citation omitted).

---

[3] The term "franchise" includes the lease for the marketing premises employed in connection with the sale, consignment, or distribution of motor fuel under the trademark owned or controlled by the refiner of by a refiner which supplies the motor fuel to the distributor which authorizes or permits occupancy of the premises. 15 U.S.C. §2801 (1)(B)(i).

[4] The term "franchisor" includes, among other things, a refiner or a distributor who authorizes or permits under a franchise, a retailer to use a trademark in connection with the sale of motor fuel 15 U.S.C. §2801(3).

[5] The term "franchisee" includes a retailer who is authorized or permitted under a franchise to use a trademark in connection with the sale of motor fuel. 15 U.S.C. §2801(4). A "retailer" means any person who purchases motor fuel for sale to the general public for ultimate consumption. *Id.* at § 2801(7).

[6] Nonrenewal is a failure to renew or extend or continue a *franchise relationship* upon the stated expiration date of the *franchise*. 15 U.S.C. §2801(14). Termination is a mid-term severance of a *franchise*. 15 U.S.C. §2801(17).

Thus, the PMPA contains an express preemption clause that preempts all state law "with respect to" franchise termination and nonrenewal.

> To the extent that any provision of this title applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect to) of any franchise relationship, no state or any political subdivision thereof may adopt, enforce or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereto) *with respect* to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this title. (emphasis added)

[15 U.S.C. § 2806(a)]

The United States Court of Appeals for the Fourth Circuit views the preemptive scope of the PMPA as a broad one. "The breadth of [the PMPA preemption provision] evinces an intent by Congress to "occupy the field relating to termination and non-renewal of petroleum franchises." *Jiminez v. BP Oil, Inc., et al.*, 853 F.2d 268, 273-74 (4th Cir. 1988); *Mobil Oil Corp. v. Virginia Gasoline Marketers and Auto Repair Ass'n*, 34 F.3d 220, 224 (4th Cir. 1994). [7] Thus, the PMPA "preempts any provision of any [state] law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination." *Jiminez v. BP Oil, Inc., et al.*, 853 F.2d 268, 273 n.1 (4th Cir. 1988). In fact, the Fourth Circuit's expansive view of the preemptive

---

[7] Courts from numerous jurisdictions have similarly found the preemptive scope to be a broad one. *See, also.*, *In re Fred Herbert*, 806 F.2d 889, 892 (9th Cir. 1986)(all state law inconsistent with PMPA is preempted); *Shukla v. BP Exploration & Oil, Inc.*, 115 F.3d 849, 855 (11th Cir. 1997) (PMPA explicitly preempts state law actions relating to "grounds for, procedures for, and notification requirements with respect to" the termination or nonrenewal of franchises); *Continental Enterprises, Inc. v. American Oil Co., et al.*, 808 F.2d 24, 28 (8th Cir. 1986)(state common law and statutory claims preempted); *Consumers Petroleum Co. v. Texaco, Inc.*, 804 F.2d 907, 915 (6th Cir. 1986)(any state law providing remedies or penalties for violations of the notice provisions of the Act preempted by PMPA); *Esquivel v. Exxon Co. U.S.A.*, 700 F. Supp. 890, 898 (W.D. Tex. 1988) (PMPA preempts all inconsistent state law); *Eubanks Bros. v. Texaco Refining and Marketing*, termination or nonrenewal of franchise); 764 F. Supp. 1142, 1144 (S.D. Tex. 1990) (court notes with approval that numerous jurisdictions interpret §2806 of the Act to preempt any state law claims related to an alleged wrongful termination or nonrenewal of a franchise); *Arabian v. BP America, et al.*, 898 F. Supp. 703, 707 (N.D. Cal. 1995)(PMPA preempts all inconsistent state law); *Karak, et al. v. Bursaw Oil Corp., et al.*, 147 F. Supp. 2d 9, 12 (D.Mass. 2001)(PMPA preempts any state law, statutory or common, in area of *Moz, Inc. v. Shell Oil Co.*, No. 85 C 9016 1986 WL 3613 at *1 (N.D. Ill. March 17, 1986) (N.D. Ill. March 14, 1986)(PMPA preempts both common and statutory state law claims and remedies).

reach of the PMPA is well known, and it has been noted by other U.S. Circuit Courts of Appeal. *See discussion in Seckler v. Star Enterprise*, 124 F.3d 1399, 1404 (11th Cir. 1997); *Unocal Corp. v. Kaabinpour*, 177 F.3d 755, 768 (9th Cir. 1999); *Mehdi-Kashi v. ExxonMobil Corp.*, No. Civ.A. H-01-179, 2002 WL 32052603 at *4 (S.D. Tex. Jan. 7, 2002).

In the view of the Fourth Circuit, the PMPA preempts any state law that impacts the termination of a franchise. It construes the words "with respect to termination" broadly as preempting any state law that provides different grounds for termination or nonrenewal or which alters the effects of a termination or nonrenewal. The Court of Appeals first enunciated the "ground/effects distinction" in *Jiminez*, where it rejected the notion that the PMPA preempts only state laws regarding the grounds for termination. *Jiminez*, 853 F.2d at 273; *Mobil Oil Corporation v. Virginia Gasoline Marketers*, 34 F.3d at 224. The effects test includes a determination of whether a state law imposes "a remedy for termination not 'the same as' those set forth in the PMPA." *Mobil Oil Corporation,* 34 F.3d at 225.

Moreover, the courts have long recognized that the PMPA's preemptive reach extends to state common law as well as statutory law. *See, e.g., Huth v. B.P. Oil, Inc.*, 555 F.Supp. 191, 193-94 (D.Md. 1983) (common law fraud claims preempted); *Continental Enterprises, Inc. v. American Coil Co., et al.*, 808 F.2d at 28 (state common law and statutory claims preempted); *Clark v. BP Oil Co.*, 930 F.Supp. 1196 (E.D. Tenn. 1996) (court found that plaintiff's state claims, including civil conspiracy claim, were preempted by PMPA), *aff'd Clark v. BP Oil Co.*, 137 F.3d 386, 395-96 (6th Cir. 1998; *Arbabian v. BP America*, 898 F.Supp. 703, 709 (N.D. Cal. 1995); *Continental Enterprises, Inc. v. American Oil Co.*, 628 F. Supp. 126, 128 (W.D. Mo. 1986)(PMPA

preempts common law actions of unjust enrichment and breach of contract), *aff'd Continental Enterprises, Inc. v. American Oil Co.*, 808 F.2d 24 (8th Cir. 1986). [8]

Where, as here, for example, plaintiffs attempt to use civil conspiracy to impose vicarious liability for a PMPA violation, the civil conspiracy claim is preempted. Under the PMPA, liability for a violation of the Act resides exclusively with the "franchisor," who is the only authorized defendant in a PMPA action. 15 U.S.C. § 2805(a). Thus, the complaint alleges that Exxon, as franchisor, constructively terminated its franchises with the plaintiffs when it assigned the franchises to White Oak. 2d Am. Cmplt. at ¶¶40-41. Because the PMPA affords plaintiffs no remedy against White Oak or Getty, plaintiffs seek to impose liability on these parties by making them part of a common law conspiracy to violate the PMPA. Their attempt to expand the scope of the PMPA, however, and to impose remedies not available thereunder, is preempted.

As the court stated in *Clark v. BP Oil Co.*, 930 F.Supp. 1196 (E.D. Tenn. 1996) *affirmed, Clark v. BP Oil Co.*, 137 F.3d 386, 395-96 (6th Cir. 1998), which rejected a virtually identical attempt to include a distributor, Downey, in a civil conspiracy to violate the PMPA:

> If BP did not violate any of the plaintiff's rights under PMPA, then the court cannot find that this defendant and the defendant Downey conspired to deprive the plaintiff of any such right. If the court concludes that BP did violate one or more rights granted to Mr. Clark by the PMPA, then the plaintiff's remedies, if any, must be derived from the PMPA, *and cannot be modified or increased by reference to any State-law civil conspiracy theory*.[9]

---

[8] S*ee, also, Karak, et al. v. Bursaw Oil Corp., et al.*, 147 F. Supp. 2d at 12 (D.Mass. 2001)(PMPA preempts any state law, statutory or common, in area of termination or nonrenewal of franchise); *Moz, Inc. v. Shell Oil Co.*, No. 85 C 9016 1986 WL 3613 at *1 (N.D. Ill. March 17, 1986)(PMPA preempts both common and statutory state law claims and remedies); *Huth v. BP Oil, Inc.*, 555 F. Supp. 191, 194 (D.Md. 1983)(Congress intended preemptive scope of PMPA to cover state common law and generalized state laws); *Esquivel v. Exxon Co. U.S.A.*, 700 F. Supp. at 896-97 (PMPA preempts state common law claims); *Siecko v. Amerada Hess Corp.*, 569 F. Supp. 768, 772-73 (E.D. Pa. 1983)(PMPA preempts state common law); *Glenside West Corp. v. Exxon Co. USA*, 761 F. Supp. 1100, 1108 (D.N.J. 1991)(PMPA preempts both statutory and common law involving wrongful terminations).

[9] *See, e.g.*, *Shukla v. BP Exploration & Oil, Inc.*, 115 F.3d 849 854-857 (11th Cir. 1997) (plaintiff's fraud claim preempted by PMPA); *Consumers Petroleum Co. v. Texaco, Inc.*, 804 F.2d 907, 915 (6th Cir. 1986) (plaintiff's misrepresentation claim preempted by PMPA); *Esquivel v. Exxon Co. U.S.A.*, 700 F. Supp. 890, 896-97 (W.D. Tex. 1988) (plaintiff's fraud claim preempted by PMPA); *Eubanks Bros. v. Texaco Refining and Marketing*, 764 F. Supp.
**Cont'd**

*Clark v. BP Oil Co.,* 930 F.Supp. at 1202.  (emphasis added)

In *Clark,* BP assigned the plaintiff's franchise to a wholesale distributor, Downey Oil

Company, in the same manner as the plaintiffs' franchises were assigned by ExxonMobil to White

Oak.  The plaintiff in *Clark* alleged that the assignment constituted a constructive termination of the

franchise under the PMPA, and it asserted a civil conspiracy theory to effect a remedy against

Downey, which could not be sued under the PMPA.  The court recognized the conspiracy claim as

an attempt to supersede the limited remedies available under the PMPA, and it correctly determined

that the civil conspiracy claim was preempted.  The Sixth Circuit Court of Appeals agreed.  137

F.3d at 395-96.

Similarly, the plaintiffs' state common law claim for unjust enrichment is preempted by the

PMPA.  *Continental Enterprises, Inc. v. American Oil Co*., 628 F. Supp. 126, 128 (W.D. Mo. 1986),

*affirmed,  Continental Enterprises, Inc. v. American Oil Co., et al*., 808 F.2d 24 (8th Cir. 1986);

*Estate of Garo Mamourian and Mary Cherkezuyan v. Exxon Co*., U.S.A., ¶8093 BUS. FRANCHISE

GUIDE (CCH) 14,101, 14,103 (D.N.J. July 26, 1983).[10]  Here, the complaint alleges that the

assignments from ExxonMobil to White Oak unjustly enriched White Oak, thus empowering the

Court to impose a "constructive trust" on White Oak's interest in the Properties.  2d Am. Complt.

at ¶¶45-47.  To the extent the assignment of plaintiffs' franchises is lawful under the PMPA, it

cannot form the basis for an unjust enrichment claim.  If the assignment constitutes a "constructive

termination" under the PMPA, the only remedies available are those authorized by the PMPA.

---

*Cont'd*
1142, 1144-46 (S.D. Tex. 1990) (plaintiff's claim under Texas Deceptive Trade Practices Act preempted); *Huth v. BP Oil, Inc.*, 555 F. Supp. 191, 193-94 (D. Md. 1983) (plaintiff's fraud claim preempted by PMPA); *Continental Enterprises, Inc. v. American Oil Co.*, 808 F.2d 24, 27 (8th Cir. 1986) (franchisee's fraud claim, "no matter how worded [was] based on a wrongful nonrenewal of the contract" and was therefore preempted by PMPA); *Arbabian v. BP America*, 898 F. Supp. 703, 709-11 (N.D. Cal. 1995) (PMPA preempted franchisees' claim that franchisor engaged in fraudulent misrepresentations).

[10] A copy of *Estate of Garo Mamourian and Mary Cherkezuyan v. Exxon Co.* is attached hereto.

The PMPA preempts state law remedies (such as the imposition of a "constructive trust") that are not "the same as" those set forth in the PMPA. *Mobil Oil Corporation v. Virginia Gasoline Marketers*, 34 F.3d at 225.

For these reasons, the only claims asserted against White Oak, civil conspiracy and unjust enrichment, should be dismissed on preemption grounds. Moreover, for the reasons that follow, the complaint fails to state a claim upon which relief can be granted as to either of these claims, irrespective of preemption.

### B. Plaintiffs Fail To State A Claim For Civil Conspiracy And Count 3 Should Be Dismissed

As recognized by the Maryland courts, civil conspiracy is a product of the law of tort. *Hale Trucks of Maryland, LLC v. Volvo Trucks North America, Inc.*, 224 F.Supp.2d 1010, 1021 (D. Md. 2002) *citing Alleco, Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 665 A.2d 1038, 1044-45 (1995). It is a form of concerted tortious action or joint tort. As Prosser notes, "[t]he original meaning of 'joint tort' was that of vicarious liability for concerted action. All persons who acted in concert to commit a [tort], in pursuance of a common desire, were held liable for the entire result." W. Prosser, LAW OF TORTS, § 46, at 291 (4th ed. 1971).

Civil conspiracy is not, therefore, a separate or independent tort capable of standing on its own as a cause of action. It has been characterized as "a parasite tort,"[11] meaning that it is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injuries to the plaintiff. *Alleco, Inc. v. Harry & Jeanette Weinberg Foundation, Inc*., 340 Md. 176, 190, 665 A.2d 1038, 1044-45 (1995); *Alexander & Alexander, Inc. v. B. Dixon Evander & Associates, Inc.*, 336 Md. 635, 645, 650 A.2d 260 (1994).

---

[11] *Kramer v. Mayor and City Council of Baltimore,* 144 Md. App. 616, 642, 723 A.2d 529 (1999).

Thus, as Judge Marbury stated in *Domchik v. Greenbelt Services*, 200 Md. 36, 42, 87 A.2d 831, 834 (1952), *cited in Alleco, Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 190, 665 A.2d 1038, 1045 (1995):

> No action in tort lies for conspiracy to do something unless the acts actually
> done, if done by one person, would constitute a tort.

*See also, Mackey*, 391 Md. at 143, 892 A.2d 479 ("no action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort.")(citation omitted); *Robb v. Wancowicz*, 119 Md.App. 531, 546-47, 705 A.2d 125, 132 (1998)("no action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort.") (citation omitted); *Kramer v. Mayor and City Council of Baltimore*, 124 Md.App. 616, 642, 723 A.2d 529, 542 (1999)(court held that plaintiff could not recover for the tort of conspiracy because he failed to prove liability for any of the underlying torts); *McLaughlin v. Copeland*, 435 F. Supp. 513, 525 (D.Md. 1977) (no action for civil conspiracy can be maintained unless the act committed would constitute a tort).

Moreover, a civil conspiracy claim requires that the underlying tort "be set forth in a separate count." *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 360 at n.6, 758 A.2d 95 (2000); *NRT Mid-Atlantic v. Innovative Properties, Inc.*, 144 Md. App. 263 287, 797 A.2d 824 (2002). In the absence of a legally sufficient tort claim against one of the conspiring parties, the civil conspiracy cause of action must be dismissed. *Kramer v. Mayor and City Council of Baltimore*, 124 Md.App. at 642, 723 A.2d at 542; *Christian v. Minnesota Mining & Manufacturing Co.*, 126 F. Supp.2d 951, 959 (D.Md. 2001)(plaintiffs' civil conspiracy claim failed where they were unable to prove that defendant committed tortious conduct)

In the instant case, plaintiffs charge ExxonMobil with violating the PMPA (Counts 1 and 3) and breaching a contract with the plaintiffs (Count 2). Neither of these claims, however, is a tort

and neither of them is sufficient to support a claim for civil conspiracy. A conspiracy to terminate a contract is not a recognizable cause of action in Maryland. *Hale Trucks of Maryland,* 224 F. Supp.2d at 1021. Nor may a breach of contract serve as a predicate for a civil conspiracy claim under the laws of other jurisdictions.[12] Civil conspiracy is a product of tort law, and it provides the means of imposing vicarious liability on a conspiring party *only* when one of the parties commits a tort.

For the same reason, a claim for civil conspiracy cannot be based on the violation of a statute, like the PMPA. *Robb v. Wancowicz*, 199 Md.App. 531, 705 A.2d 125 (1998). In *Robb*, the plaintiff was injured in a collision with an adult motorist. The plaintiff brought an action against the motorist's father, who had affixed to the motorist's vehicle an expired license plate that had been issued for another vehicle. The plaintiff sued for, among other things, civil conspiracy, contending that the motorist's father had entered into an agreement to violate a statute by affixing an expired license plate to the vehicle. The trial court granted summary judgment in favor of the father and the plaintiff appealed.

Citing the Maryland Court of Appeals decision in *Domchick v. Greenbelt*, the Court of Special Appeals found that there could be no civil conspiracy to do something unless the act actually done constituted a tort. *Id*. at 546. In affirming the lower court decision, the Court of Special Appeals went on to state that, even if the father entered into an agreement to affix the

---

[12] Like Maryland, other jurisdictions that have held that only an underlying tortious act, and not breach of contract claim, can serve as the underlying wrong that supports a civil conspiracy claim. *See, e.g. Walsh v. America's Tele-Network Corp*., 195 F. Supp.2d 840, 850-851 (E.D. Tex. 2002)(breach of contract cannot support a claim for civil conspiracy); *Peterson v. North Dakota University System*, 678 N.W.2d 163, 174-75 (N.D. 2004) ("breach of contract alone is not a tort and it will not support a claim for civil conspiracy"); *Ram Products Co., Inc. v. Chauncey*, 967 F. Supp. 1071, 1084 (N.D. Ind. 1997) ("A breach of contract is not a tort and therefore may not serve as the basis for establishing a civil conspiracy"); *JP Morgan Co. Nat'l Assoc. v. Mid-America Pipeline Co*., 413 F. Supp.2d 1244, 1269 (D. Kan. 2006)(court dismissed civil conspiracy claim not predicated on an underlying tort but on a "mere breach of contract claim"); *Grizzle v. Tex. Comm. Bank, NA*, 38 S.W.3d 265, 285 (Tex.Ct.App. 2001) ("Because breach of contract is not a tort, it will not support a civil conspiracy"); *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 892 (Del. Ch. 2009) ("unless the breach also constitutes an independent tort, a breach of contract cannot constitute an underlying wrong on which a claim for civil conspiracy could be based").

license plate in violation of the law, the plaintiff had no civil conspiracy claim because the father's "conduct did not constitute a tort" against the plaintiff, nor was there any evidence that the "purpose to be accomplished by the agreement was the perpetration of tortious conduct." *Id.*[13]

In Count 3 of the Second Amended Complaint, plaintiffs allege that there was an agreement "and thus a conspiracy between ExxonMobil, White Oak Petroleum and Getty to accomplish an unlawful objective as described herein, and for which ExxonMobil, White Oak Petroleum and Getty have legal responsibility." 2d Am. Cmplt. at ¶38A. The only allegation of unlawful activity described in the Second Amended Complaint is a breach of contract and violation of the PMPA by ExxonMobil. Maryland law does not recognize civil conspiracy to breach a contract or to violate statute, either as an independent cause of action or as a means of imposing vicarious liability. The civil conspiracy claim should, therefore, be dismissed.

**C.** **The Plaintiffs Fail To State A Claim For Unjust Enrichment As To The Defendant White Oak And, Therefore, The Remedy Of A Constructive Trust Is Unavailable**

In Count 4 of the Second Amended Complaint, plaintiffs demand the imposition of a constructive trust on the properties leased by White Oak from Getty "for the benefit of plaintiffs." 2d Am. Cmplt. at ¶47A. The "constructive trust" would require White Oak and Getty to "divest their interests" in the Properties in order to effectuate a remedy against ExxonMobil. *Id.* at ¶47B.

---

[13] See also, similar result in the District of Columbia, *Hall v. Clinton*, 143 F. Supp.2d 1,7 (D.D.C. 2001). In *Hall*, 143 F. Supp.2d 1, the plaintiff alleged a conspiracy to violate the Hatch Act by using government resources and personnel to create a database for use as a partisan tool. In dismissing this count, the district court explained that

> "as a matter of substantive law, one cannot be liable for a conspiracy that does not have as its object an actionable wrong." *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1494 (D.C.1989). Thus, a violation of the Hatch Act, even if true, cannot be the basis of a privately actionable *tort*.

*Hall*, 143 F.Supp.2d at 7.

A constructive trust is not an independent cause of action. A constructive trust is a "*remedy* for unjust enrichment." *Washington Suburban Sanitary Commission v. Utilities, Inc. of Maryland*, 365 Md. 1, 39, 775 A.2d 1178, 1200 (Md. 2001)(emphasis added).[14] "The purpose of the remedy is to prevent the unjust enrichment" of a holder of property. *Wimmer*, 287 Md. at 668, 414 A.2d 1254; *Jahnigen*, 143 Md.App. at 556, 795 A.2d 234; *Troy v. Hart*, 116 Md. App. 468, 480, 697 a.2d 113, 119 (1997); *Starleper v. Hamilton*, 106 Md. App. 632, 637, 666 A.2d 867, 869 (1995). Where there is no unjust enrichment, the remedy of a constructive trust is not available to the plaintiff. *Washington Suburban Sanitary Commission*, 365 Md. at 39, 775 A.2d 1178; *Nat'l Union Fire Insur. Co. of Pittsburgh, PA*, 240 F. Supp.2d 455, 459 (D.Md. 2003), *vacated by consent motion*, 2003 WL 22508090 (D.Md. July 15, 2003).[15]

The elements of an unjust enrichment claim in Maryland are:

1. A benefit conferred upon the defendant by the plaintiff;
2. An appreciation or knowledge by the defendant of the benefit; and
3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151, 757 A.2d 108, 113 (2000).

---

[14] *See also, e.g., Wimmer v. Wimmer*, 287 Md. 663, 668, 414 A.2d 1254, 1258 (1980) ("A constructive trust is a *remedy*…")(emphasis added); *Tedesco v. Tedesco*, 111 Md.App. 648, 676, 683 A.2d 1133, 1147 (1996)("A constructive trust is a *remedy*. . . ")(emphasis added); *Jahnigen v. Smith*, 143 Md. App. 547, 556, 795 A.2d 234, 239 (2002)("A constructive trust is a *remedy*. . . .")(emphasis added); *Adams v. Brooks*, Civil Action No. DKC 2005-3332 2007 WL 5745937 at *8 (D.Md. July 25, 2007)("[a] constructive trust is [a] *remedy* . . .)(citation omitted)(emphasis added).

[15] There is some confusion as to whether fraud is an essential element for imposing a constructive trust. In *From the Heart Church Ministries, Inc. v. African Methodist Episcopal Zion Church*, 370 Md. 152, 183 n.23, 803 A.2d 548 (2002), the Maryland Court of Appeals stated that "[a]n essential element of constructive trust is fraud"); *see, also Eisinger Mill & Lumber Co. v. Dillon*, 159 Md. 185, 191, 150 A. 267, 270 (1930); *Bowie v. Ford*, 269 Md. 111, 119, 304 A.2d 803, 808 (1973)("Constructive trusts . . . are raised by equity in respect of property which has been acquired by fraud . . "). In a recent case before the Maryland Court of Special Appeals, *Arriz v. Klinger-De Arriz*, 179 Md. App. 458, 480, 947 A.2d 59 (2008), *citing Hartsock v. Strong*, 21 Md.App. 110, 116-118, 318 A.2d 237 (1974), the court stated that "[a]lthough it has been stated that fraud is an essential element in the creation or existence of a constructive trust, fraud is not required." The Court need not reach the issue of whether fraud is an essential element for a constructive trust in the instant action because, as set forth more fully below, the plaintiffs fail to state a claim for unjust enrichment.

The only allegations of the Second Amended Complaint concerning unjust enrichment are the non-factual conclusory statements that:

> 46.     Defendants acquired their respective interests in the White Oak Transaction stations under circumstances rendering it inequitable for them to retain such interests.  In particular, such interests were acquired in derogation of plaintiffs' rights under the federal PMPA.

> . . . . . . .

> 47.     Defendants have been unlawfully and unjustly enriched through acquisition of interest in the White Oak Transaction stations that properly belong to plaintiffs.

[2d Am. Cmplt. at ¶¶46 and 47]

As indicated by the above-quoted allegations, the plaintiffs plead no facts to support the elements of a claim for unjust enrichment.  There is, for example, no mention of any benefit conferred on White Oak by any *plaintiff*.  Indeed, there is no description of the benefit conferred or what role the plaintiffs played in conferring it.  If the benefit consists of the sale of the Properties, the benefit was bestowed by ExxonMobil.  It was not bestowed by the plaintiffs.

More importantly, there are no facts to support a conclusion that White Oak received the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit *without the payment of its value*.  There is nothing in the Second Amended Complaint to suggest that White Oak did not pay ExxonMobil the fair market value for the Properties.  Nor is there anything in the complaint to indicate that White Oak does not now pay a fair market rental to Getty to lease the Properties. [16]

---

[16]The burden is on the plaintiff to prove that the benefit was received by defendant without payment of the value of the benefit. *See, e.g., Plitt v. Greenberg*, 242 Md. 359, 365, 219 A.2d 237 (1966) ("In order to make out a case of unjust enrichment, the burden rested upon [the plaintiff] to prove that the proceeds of his check . . . were received without the payment of valuable consideration from [the defendant]"); *Bank of America Corp. v. Gibbons*, 173 Md.App. 261, 273, 918 A.2d 565 (2007) (("In order to make out a case of unjust enrichment, the burden rested upon [the plaintiff] to prove that the proceeds of his check . . . were received without the payment of valuable consideration from [the defendant]")(citation omitted).

Instead, the complaint relies on conclusory statements and threadbare recitals of a single element of an unjust enrichment claim. To survive a motion to dismiss, however, the complaint must allege facts sufficient to establish each element of the claim, *Dickson v. Microsoft Corp.*, 309 F.3d at 213, and it may not aver legal or other non-factual conclusions or arguments as a substitute for facts. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d at 180. As the Fourth Circuit stated in *Migdal v. Rowe Price-Fleming Intern'l Incorp.*, "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged from the complaint cannot support the legal conclusion." *Id.* 248 F.3d at 326.

In short, the Second Amended Complaint fails to state a claim upon which relief can be granted with respect to unjust enrichment. In the absence of a legally sufficient unjust enrichment claim, the imposition of a "constructive trust" on White Oak is inconsistent with Maryland law.

## IV. CONCLUSION

Based on the foregoing, White Oak's motion to dismiss should be granted.

Respectfully submitted,

_____\s\_____
Alphonse M. Alfano (D. Md. # 13862)
BASSMAN, MITCHELL & ALFANO, CHARTERED.
1707 L Street, N.W., Suite 560
Washington, DC 20036
P: (202) 466-6502; F: (202) 331-7510
E: bma@bmalaw.net

Attorney for Defendant White Oak Petroleum, LLC