IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| DUNCAN SERVICES, INC., et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 8:09-cv-02486 |
| v. ) | |
| ) | Judge Alexander Williams, Jr. |
| EXXONMOBIL OIL CORPORATION, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DEFENDANTS' MOTION TO DISMISS
## THE WHITE OAK PLAINTIFFS' CLAIMS
## IN THE SECOND AMENDED COMPLAINT (COUNTS II & III)

Pursuant to Federal Rules of Civil Procedure Rule 12 (b)(6), Defendants ExxonMobil Oil Corporation and Exxon Mobil Corporation (collectively, "Exxon"), through undersigned counsel, move to dismiss the remaining claims against Exxon—namely, Count II for breach of contract and Count III for violation of the PMPA. Plaintiffs, whose franchises have been assigned to White Oak Petroleum LLC ("White Oak"), fail to state a claim for breach of contract because they do not identify *any* contractual provision Exxon breached by assigning the franchises to White Oak. Indeed, plaintiffs' franchise agreements expressly permit Exxon to assign the agreements "without restriction, to any person or entity." (Franchise Agreement, § 12.7, Ex. A.) The White Oak Plaintiffs' PMPA claim should also be dismissed because Exxon's assignment of plaintiffs' franchise agreements cannot constitute either a termination or non-renewal of the franchise so as to establish "constructive termination" under the PMPA.

WHEREFORE, as more fully explained in the accompanying Defendants' Memorandum in Support of Their Motion to Dismiss the White Oak Plaintiffs' Claims in the Second Amended Complaint (Counts II and III), which is incorporated by reference:

    A.    Defendants respectfully request the Court dismiss Count II in Plaintiffs' Second Amended Complaint, with prejudice;

    B.    Defendants respectfully request the Court dismiss Count III in Plaintiffs' Second Amended Complaint, with prejudice; and

    C.    That the Court grant such additional relief as may be required.

Date: December 3, 2009

Respectfully submitted,

/s/
Maurice A. Bellan
Federal Bar No. 14390
ARENT FOX LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 30036

Mark S. Lillie, P.C.
Andrew A. Kassof, P.C.
A. Katrine Jakola
Joseph M. Russell
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654

*Counsel for Defendants ExxonMobil Oil Corporation and ExxonMobil Corporation*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLND
(SOUTHERN DIVISION)

| | |
|---|---|
| DUNCAN SERVICES, INC., et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 8:09-cv-02486-AW |
| v. ) | |
| ) | |
| EXXONMOBIL OIL CORPORATION, et al. ) | |
| ) | |
| Defendants. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day December, 2009, the foregoing Defendants' Motion to Dismiss the White Oak Plaintiffs' Claims in the Second Amended Complaint (Counts I & II)) was filed using the CM/ECF system, which system will serve by electronic service the following participant-parties in the CM/ECF system:

>Harry C. Storm, Esq.
>Stuart A. Schwager, Esq.
>3 Bethesda Metro Center
>Suite 460
>Bethesda, MD 20814
>
>Alphonse M. Alfano, Esq.
>Bassman, Mitchell & Alfano, Chartered
>1707 L Street, N.W. – Suite 560
>Washington, D.C. 20036
>
>Jeffrey L. Leiter, Esq.
>Leiter & Cramer PLLC
>1707 L Street, NW
>Suite 560
>Washington, DC 20036

Howard N. Berliner, Esq.
Berliner Law Firm, PLLC
2101 L Street, NW
Suite 1000
Washington, DC 20037

                                     /s/
                         Maurice A. Bellan, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| DUNCAN SERVICES, INC., et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 8:09-cv-02486 |
| v. ) | |
| ) | Judge Alexander Williams, Jr. |
| EXXONMOBIL OIL CORPORATION, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE WHITE OAK PLAINTIFFS' CLAIMS IN THE SECOND AMENDED COMPLAINT (COUNTS II & III)

On November 6, 2009, this Court granted Exxon's motion to dismiss the breach of contract and Petroleum Marketing Practices Act ("PMPA") claims brought by plaintiff-dealers whose franchise agreements with Exxon had not yet been assigned. Exxon now moves to dismiss the breach of contract and PMPA claims (Counts II and III) brought by the remaining plaintiffs whose franchise agreements were recently assigned by Exxon to White Oak Petroleum LLC ("White Oak"). These plaintiffs allege that Exxon's assignment of their franchise agreements to White Oak improperly "terminated" their franchises, in violation of the PMPA and the parties' franchise agreements.

Like the claims this Court already has dismissed, the claims by the remaining plaintiffs fail as a matter of law because the challenged assignments are *expressly authorized* by the parties' franchise agreements, the PMPA and Maryland state law. In their contracts with Exxon, each plaintiff expressly agreed that Exxon could assign its franchise "*without restriction, to any person or entity.*" (Franchise Agreement, § 12.7, Ex. A (emphasis added)) Both the PMPA and Maryland state law require

enforcement of this unfettered assignment provision, and plaintiffs cannot now seek to avoid their clear and unambiguous contracts. Thus, the remaining plaintiffs' claims for breach of contract (Count II) and for "constructive termination" under the PMPA (Count III) should also be dismissed.[1]

## BACKGROUND

The factual allegations necessary to decide this motion are undisputed. As alleged in the Second Amended Complaint, Exxon is engaged in the "refining and marketing of motor fuel and petroleum products under its 'Exxon' and 'Mobil' brands." (2d Am. Compl. ¶ 7A) The plaintiffs "are all retail 'Exxon' motor fuel franchisees who . . . operate retail service stations in Maryland pursuant to written 'PMPA Motor Fuel Franchise Agreements.'" (*Id.* ¶ 5)

In their franchise agreements, plaintiffs clearly and expressly authorized Exxon to assign its contractual rights and duties to any other party or entity, including a non-refiner like White Oak:

> ***ExxonMobil may transfer or assign all or part of its rights or interest in this Agreement, or delegate all or part of its duties or obligations under this Agreement, without restriction, to any person or entity.*** Upon any assignment or delegation by ExxonMobil, ExxonMobil's assignee or delegatee will be substituted for ExxonMobil with respect to all assigned rights or interests and to all delegated duties and obligations and ExxonMobil will be released from any delegated duties and obligations.

---

[1] The remaining plaintiffs also bring a claim for a constructive trust against defendants White Oak and Getty Realty (Count IV). Because the parties' agreement expressly authorizes Exxon's assignment to White Oak, and because there is no basis for any breach of contract or claim for "constructive termination" under the PMPA, there is likewise no basis or property on which to impose a construct trust. *See, e.g., Arriz v. Klinger-De Arriz*, 947 A.2d 59, 72 (Md. App. 2008) ("unless there is an acquisition of property in which another individual has an equitable claim, no constructive trust may be imposed"). For similar reasons, the *remedy* of a constructive trust is not available to plaintiffs because there has been no unjust enrichment. *Washington Suburban Sanitary Comm'n v. Utilities, Inc. of Md.*, 775 A.3d 1178, 1200 (Md. 2001) (a constructive trust is a "remedy for unjust enrichment").

(Franchise Agreement, § 12.7, Ex. A (emphasis added)). Moreover, each plaintiff expressly acknowledged that Exxon could freely assign the franchise agreement, including to an assignee with policies and programs that might be different from Exxon's:

> Franchise Dealer acknowledges that:
>
> (a) an assignment or delegation by ExxonMobil may impact Franchise Dealer's rights and obligations under this Agreement to the extent that an assignee or delegatee has *policies or programs that differ from ExxonMobil's policies and programs*;
>
> (b) this impact is contemplated by the Parties under this Agreement ...

(*Id.*) (emphasis added) Moreover, each franchise agreement contains an open price term, in which plaintiffs expressly agreed that prices are to be determined by Exxon and "are subject to change by ExxonMobil at any time and without notice." (*Id.* § 2.2)[2]

In June 2008, Exxon "announced to its dealers . . . that it intended to divest all of its retail station holdings." (2d Am. Compl. ¶ 22) Over one year later, on September 25, 2009, Exxon assigned its franchise agreements with the remaining plaintiffs to White Oak and the station premises were sold to Getty Realty. (*Id.* at ¶ 17) White Oak is a distributor through which Exxon now supplies the White Oak Plaintiffs Exxon-branded gasoline. (*See id.* ¶¶ 17, 23) Delivery of fuel through distributors like White Oak "is now standard industry practice exercised by the other major refiners." (Mem. Op. at 2) Exxon currently distributes about seventy-five percent of its fuel nationwide through distributors like White

---

[2] Although the franchise agreements are not attached to the Second Amended Complaint, plaintiffs incorporate and rely on them to assert claims against Exxon. (*E.g.*, 2d Am. Compl. ¶ 12) (listing 23 bullets describing contracts). The Court therefore may consider these documents in ruling on this motion to dismiss. *E.g., Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (court may consider document attached to motion to dismiss if "integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity") (quotation and citations omitted). Exhibit A to this motion is the franchise agreement between Exxon and one of the plaintiffs. Because plaintiffs allege that such agreements are "uniform" (2d Am. Compl. ¶ 2), Exxon does not attach agreements with each of the other remaining plaintiffs.

3

Oak, who then sell the fuel to retail dealers like plaintiffs. (*Id.*) In addition to being supplied with Exxon-branded gasoline, the remaining plaintiffs continue to use Exxon's trademark and continue to lease their station premises, pursuant to the terms of their assigned franchise agreements. (*See* 2d Am. Compl. ¶ 17)

## ARGUMENT

As the United States Supreme Court recently reiterated in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), a motion to dismiss should be granted where the plaintiff fails to allege facts sufficient to establish a plausible entitlement to relief. *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). To survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal quotations and citations omitted). Moreover, while well-pleaded allegations of the complaint are accepted as true and construed in favor of the plaintiff, the court is not obliged to accept as true legal conclusions or unsupported conclusions of fact. *Iqbal*, 129 S. Ct. at 1949-50; *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006). Plaintiffs here do not, and cannot, plead sufficient facts to state a breach of contract or PMPA claim against Exxon. Both claims should be dismissed.

### I. PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT (COUNT II).

To state a breach of contract claim, a "plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *CompuSpa, Inc. v. IBM Corp.*, 228 F. Supp. 2d 613, 620 (D. Md. 2002) (citation omitted). Here, plaintiffs' breach of contract claim should be dismissed because plaintiffs do not identify *any* contractual provision Exxon could have breached by assigning the franchises to White Oak. With good reason—the franchise agreements *expressly permit* Exxon to

assign the Agreements "*without restriction, to any person or entity.*" (Franchise Agreement, § 12.7, Ex. A) (emphasis added)

This contract term is binding and enforceable. *See* Md. Code, *Com. Law* § 2-210(2); *Korangy v. Mobil Oil Corp.*, 84 F. Supp. 2d 660, 665 (D. Md. 2000). Plaintiffs cannot rewrite the terms of their contracts by inserting a limitation on Exxon's assignment right, whereby they now attempt to preclude assignment to a non-refiner like White Oak. Instead, the Court must apply the terms of the parties' contracts as written. *See Rohan v. Networks Pres. LLC*, 375 F.3d 266, 281 (4th Cir. 2004) ("Under Maryland law, it is improper for the court to rewrite the terms of a contract for the parties where the terms of the contract are clear and unambiguous.") (quotation and citation omitted). For this reason, a breach of contract claim cannot survive a motion to dismiss where, as here, the contract provisions actually contradict plaintiffs' allegations. *See* Fed. R. Civ. P. 10(c); *Foshee v. Daoust Const. Co.*, 185 F.2d 23, 25 (7th Cir. 1950) (where inconsistent, contract terms "must prevail over the averments differing therefrom") (citation omitted). Because the assignments plaintiffs now challenge do not violate and, indeed, are expressly authorized by the terms of the parties' franchise agreements, plaintiffs' breach of contract claim (Count II) should be dismissed.[3]

II.  **PLAINTIFFS CANNOT STATE A PMPA CLAIM (COUNT III), BECAUSE THE PMPA DOES NOT PROHIBIT ASSIGNMENTS LIKE THIS ONE THAT ARE AUTHORIZED BY THE PARTIES' FRANCHISE AGREEMENT.**

Under the PMPA, parties to a franchise agreement may expressly agree to allow for a transfer or assignment of the franchise:

---

[3] The breach of contract claim should also be dismissed because it is preempted by the PMPA. *See Clark v. BP Oil Co.*, 930 F. Supp. 1196 (E.D. Tenn. 1996), *aff'd* 137 F.3d 386 (6th Cir. 1998). Plaintiffs' civil conspiracy allegations fail for the same reason. *See, e.g., id.* at 1202 (holding that remedies for PMPA violations "must be derives from the PMPA, and cannot be modified or increased by reference to any State-law civil conspiracy theory").

> *Nothing in this subchapter* authorizes any transfer or assignment of any franchise or *prohibits any transfer or assignment of any franchise as authorized by the provisions of such franchise* or by any applicable provision of State law which permits such transfer or assignment without regard to any provision of the franchise.

15 U.S.C. § 2806(b)(1). That is precisely the situation here. Plaintiffs agreed in their franchise agreements that Exxon could freely assign their stations to any third party. (Franchise Agreement, § 12.7, Ex. A) As the statute expressly provides, nothing in the PMPA "prohibits any transfer or assignment" under that agreed-upon assignment right. 15 U.S.C. § 2806(b)(1). Plaintiffs' PMPA claim—which is based on the very assignments each plaintiff contractually authorized—fails for this reason alone.

### III. PLAINTIFFS CANNOT STATE A PMPA CLAIM (COUNT III) BECAUSE THE ASSIGNMENT CANNOT CONSTITUTE A CONSTRUCTIVE TERMINATION OR NONRENEWAL.

Even if the plain language of the PMPA did not preclude plaintiffs' challenge to Exxon's assignment, plaintiffs' "constructive termination" claim fails for additional reasons as well. To state a claim under the PMPA, a plaintiff must "prove as a threshold matter that there *has been a termination or nonrenewal of the franchise* within the meaning of the PMPA." *Clark v. BP Oil Co.*, 137 F.3d 386, 390 (6th Cir. 1998) (emphasis added); *Chestnut Hill Gulf, Inc. v. Cumberland Farms, Inc.*, 940 F.2d 744, 748 (1st Cir. 1991) (same); 15 U.S.C. § 2805(c) ("In any action under subsection (a) of this section, the franchisee shall have the burden of proving the termination of the franchise or the nonrenewal of the franchise relationship."). Exxon's assignment of plaintiffs' franchise agreements to White Oak cannot constitute either a "termination" or "non-renewal" of the franchise.[4]

---

[4] It is black letter law that an assignment of a contract cannot constitute an "actual termination" of the contract, under the PMPA or otherwise. In an actual termination, a party formally terminates the franchise, and obligations under the contract
(Continued...)

As the legislative history of the PMPA "demonstrates convincingly," "Congress did not consider franchise assignments to be an 'open sesame' to the Act." *Chestnut Hill*, 940 F.2d at 750 ("The general rule is that assignments of franchises do not trigger the provisions of the Act so long as the assignments do not violate state law and do not violate the contract rights of franchisees."); *see also Barnes v. Gulf Oil Corp.*, 795 F.2d 358 (4th Cir. 1986) (*"Barnes I"*). A franchise assignment can be considered a constructive termination only in two limited circumstances: "(1) when an assignment is invalid as a violation of state law, or (2) when an assignment results in a breach of one of the three statutory components of the franchise." *Korangy*, 84 F. Supp. 2d at 664-65 (citing *Barnes I*, 795 F.2d at 363-64); *May-Som Gulf, Inc. v. Chevron U.S.A., Inc.*, 869 F.2d 917, 922 (6th Cir. 1989); *Beachler v. Amoco Oil Co.*, 112 F.3d 902, 906 (7th Cir. 1997). In other words, as a matter of law, an assignment by itself cannot constitute a "termination" under the PMPA; rather, the plaintiff must establish an assignment *plus* a violation of state law or a breach of the essential elements of the franchise. Plaintiffs' allegations confirm that neither exception is present here.

A. **The Assignment to White Oak Is Valid Under Maryland Law.**

Under Maryland law, *"[u]nless otherwise agreed* all rights of either seller or buyer can be assigned except where the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on him by his contract, or impair materially his chance of obtaining return performance." Md. Code, *Com. Law* § 2-210(2) (emphasis added); *see Korangy*, 84 F. Supp. 2d at 665 (contracts are "freely assignable" under Maryland law unless a statutory exception

---

are discharged. *See, e.g., Abrams Shell v. Shell Oil Co.*, 343 F.3d 482, 486 (5th Cir. 2003); Md. Code, *Com. Law*, § 2-106(3). Plaintiffs do not base their claims on any formal termination of the franchise agreements, but instead, on Exxon's assignment or transfer of its "rights and duties" under those agreements to White Oak. (*See, e.g.*, 2d Am. Compl. ¶¶ 23-24, 27).
7

applies).⁵. Here, the parties did, in fact, expressly agree that Exxon could freely assign its rights and duties under the agreements—without limitation: "***ExxonMobil may transfer or assign*** all or part of its rights or interest in this Agreement, or delegate all or part of its duties or obligations under this Agreement, ***without restriction, to any person or entity***." (Franchise Agreement, § 12.7, Ex. A (emphasis added)).

Plaintiffs try to avoid the plain language of this free-assignment provision by vaguely alleging that the discretion afforded Exxon under the franchise agreements renders Exxon's contractual duties "personal" and thus, non-delegable under Maryland law. (2d Am. Compl. ¶ 12) Discretion over certain issues affecting the franchisees' business—including the supply and price of gasoline—does not, however, transform the agreements into "personal service" contracts, as plaintiffs allege. *See, e.g. May-Som*, 869 F.2d at 924 (noting that plaintiffs did not dispute that refiner's duties under franchise agreement were not "personal in nature"). As the Maryland Court of Appeals has held, "[r]ights which would not otherwise be capable of assignment because too personal in their character, and duties, the performance of which for a similar reason could not be delegated, ***may be assigned or delegated if the contract so provides***." *Wolbert v. Rief*, 71 A.2d 761, 764-65 (Md. 1950) (quoting Williston, Contracts (Rev.Ed.) § 423) (emphasis added). Because the parties' agreements expressly provide Exxon the right to assign its rights and obligations under the contracts to any third party, the assignment is valid and enforceable under Maryland law.

---

⁵ Unlike the terms brokered by the franchisees in *Korangy*, plaintiffs here agreed that Exxon could assign its rights to any entity, including non-Exxon affiliates. 84 F. Supp. 2d at 665 (franchise assignment to non-Mobil affiliate violated Maryland law because franchise agreement permitted assignment only to Mobil "affiliate").

8

The parties' agreement to allow Exxon to assign plaintiffs' franchises to White Oak means that there is no need for the Court to wade through the purported "material changes" to plaintiffs' franchises alleged in the Complaint. *See Beachler*, 112 F.3d at 907-08 (agreed assignment provision overrides dealers' arguments that the "assignments would 'increase materially the burden or risk imposed' on the dealers by the agreements or would 'impair materially [their] chance of obtaining return performance'"); *cf.* Md. Code, *Com. Law* § 2-210(2) (containing identical statutory language at issue in *Beachler*). Exxon and the plaintiffs' assignment agreement also distinguishes this case from *Barnes*, just as the parties' assignment agreement in *Beachler* distinguished the facts of that case from *Barnes*. *Beachler*, 112 F.3d at 908 n.5 ("because of that agreement, this case cannot be likened to *Barnes*").

Regardless, nothing about the assignments to White Oak "materially changes" the rights and obligations of the parties under the franchise agreements in any event. In fact, the franchise agreements expressly contemplate and allow each and every one of the alleged "changes" resulting from the assignments to White Oak:

- Plaintiffs allege that White Oak has "materially increased the price of the motor fuel." (2d Am. Compl. ¶ 17) But as plaintiffs acknowledge, the "open price term" in the franchise agreements allows Exxon to "determin[e]...the price to be charged to the dealers for their motor fuel." (*Id.* ¶ 12) The same provision governs the price now determined by White Oak. (*Id.* ¶ 24) (after assignment, the new assignee "will determine among other things, the all important price which [the dealers] pay for their motor fuel").[6]

- Plaintiffs complain that White Oak is a non-refiner not subject to the divorcement statute and, unlike Exxon, can compete directly with plaintiffs. (2d Am. Compl. ¶¶ 12, 33) Plaintiffs' franchise agreements, however, expressly allow Exxon to assign the franchise to *any* third party, including a non-refiner, even if that third party has programs or policies different from Exxon. (Franchise Agreement, § 12.7, Ex. A)

---

[6] Under Maryland law, an assignee "stands in the shoes of the assignor and acquires the same rights and liabilities as if it had been an original party to the contracts." *Women in Military Serv. for Am. Mem'l Found., Inc. v. Hartford Fire Ins. Co.*, 21 F. Appx. 186, 192 (4th Cir. 2001) (citation omitted).

- Plaintiffs allege that "[t]he unique Franchise Agreements and the System are exclusive product supply agreements that are not assignable to a party who (unlike ExxonMobil) will likely become a retail competitor of the Dealer Plaintiffs . . . ." (2d Am. Compl. ¶ 33) Plaintiffs' allegation conflicts with the express terms of the agreements. The franchise agreements do not limit the "parties" to which Exxon may assign its rights and obligations— the agreements may be assigned to any third party. (Franchise Agreement, § 12.7, Ex. A)

- Finally, plaintiffs allege that White Oak has "limited resources" compared to Exxon. (2d Am. Compl. ¶ 33) There is no "resource limitation" exception on Exxon's assignment right in the parties' agreement. (Franchise Agreement, § 12.7, Ex. A)

The Eleventh Circuit's decision in *Shukla v. BP Exploration & Oil, Inc.*, 115 F.3d 849 (11th Cir. 1997) is instructive. The dealer in *Shukla* argued that the assignment of his franchise to a distributor amounted to a constructive termination in violation of the PMPA. *Id.* at 851. The *Shukla* plaintiff argued, like plaintiffs here, that "the assignment increased his burdens under the franchise agreement" because the distributor, Petro, "charged Shukla too much for gasoline, so that Shukla was unable to compete effectively with Petro's company station." *Id.* at 853. Relying on the language of the franchise agreement, the Eleventh Circuit rejected the dealer's "constructive termination" argument:

> [T]he prices Petro charged Shukla for gasoline could not have increased Shukla's contractual burdens because the [franchise agreement] did not fix a price for gasoline. Rather, the [agreement] provided that prices for all BP products purchased by Shukla "shall be BP's price in effect at the time and place of delivery for franchise dealers. Prices for all products shall be subject to change without notice to Dealer." BP was free to raise the price of gasoline; its assignee, Petro, was therefore free to do the same.

*Id.* (emphasis added) (internal citations omitted); *see also* Restatement (Second) of Contracts § 323 cmt. a (2009) (assent to an assignment can "operate to preclude [an obligor's] objection based on a change in his duty, burden or risk or in his chance of obtaining return performance"). The same reasoning applies here. The plaintiffs not only agreed to an "open price term" virtually identical to the one in *Shukla*, but also expressly agreed that Exxon could assign their franchise agreements to any third party. There is no

10

"non-refiner" exception to Exxon's free-assignment right, and plaintiffs cannot retroactively add limitations on Exxon's contractual assignment rights now.

The facts in *Barnes* illustrate the point. In *Barnes*, after ample time with the assignee as its supplier, the plaintiff came forward with evidence that the assignee had actually increased the price of gasoline *above the specified contractual amount*. *Barnes I*, 795 F.2d at 363. The *Barnes* plaintiff even quantified the impact of that price increase (approximately $1,000 per month), and alleged numerous ways in which the assignee interfered with her business and caused her to discontinue a portion of her business that generated one half of her net income. *Id.* at 361-63.

Here, in contrast, plaintiffs do not (and cannot) allege that White Oak has raised prices beyond a contractual limit or taken any other actions contrary to the terms of their franchise agreements. This is precisely why *Shukla, Beachler, Clark* and other cases have rejected similar claims. *See, e.g., Shukla*, 115 F.3d at 853 (collecting cases) (considering open price term nearly identical to one here and holding that because refiner could raise price charged to plaintiff, its assignee, a distributor, "was therefore free to do the same"); *Clark v. BP Oil Co.*, 137 F. 3d 386, 392 (6th Cir. 1998) (plaintiffs' PMPA claim failed because franchisee agreed to an open price term under which BP, and therefore its assignee, was "free to change the price charged for gasoline at any time"); *Beachler*, 112 F.3d at 908 ("the possibility that an assignee-distributor may charge a higher price generally will be insufficient to constitute a material burden," where the refiner has the contractual right "to raise the price at which motor fuel will be sold to the dealers"); *May-Som Gulf*, 869 F.2d at 924 (construing open price term similar to one here and holding that "plaintiffs' price increase allegations could not constitute a contractual burden").

In addition, the thrust of plaintiffs' allegations—that a non-refiner like White Oak cannot continue to uphold the assigned obligations to plaintiffs under the franchise agreements—rests on

speculative concerns that cannot support a claim under the PMPA. In particular, plaintiffs allege that White Oak "*will likely* become" a retailer competitor of plaintiffs that "*will* . . . market directly or indirectly under other brands and not have singular loyalty to the ExxonMobil brand and System. . . ." (2d Am. Compl. ¶ 41) (emphasis added) Such "speculative allegations concerning the future" cannot form the basis for a constructive termination claim under the PMPA. *May-Som*, 869 F.2d at 923 (upholding franchise assignment under PMPA because "the validity of the assignment must be judged on the facts before the court, not speculative allegations concerning the future"); *Beachler*, 112 F.3d at 909 (holding franchise assignment was valid where "[t]he speculative nature of the risk . . . means that the unlikely scenario posed by the dealers cannot constitute a materially increased burden or risk" under PMPA); *Kothari v. Motiva Enters. LLC*, No. H-05-0499, 2006 WL 2129097, at *3 (S.D. Tex. July 27, 2006) ("A yet-unrealized, purely speculative danger of termination is not sufficient to obtain PMPA injunctive relief.").

Finally, plaintiffs' assertion that Maryland's divorcement statute somehow restricts Exxon's ability to assign their franchises to non-refiners would simply rewrite both the terms of the parties' agreements as well as the divorcement statute itself. Exxon contracted for the right to assign its franchises to any third parties, *including* non-refiners. Equally important, while the Maryland divorcement statute prohibits refiners from operating service stations in Maryland, nothing in the statute prohibits non-refiners from competing directly with independent dealers nor forbids a refiner from assigning its franchise to a non-refiner distributor. *See* Md. Code, Bus. Reg. § 10-311. There is simply no basis for any allegation that an assignment to a non-refiner violates the franchise agreements or Maryland law.

## B. The Assignment Does Not Breach Any of the Elements of Plaintiffs' Franchises.

The *Barnes* court established a three-part test for analyzing whether an assignment breaches the essential elements of a franchise, thereby amounting to a constructive termination under the PMPA. *Barnes I*, 795 F.2d at 360. The "three statutory components" of a "franchise" under the PMPA are: (1) use of the franchisor's trademark; (2) supply of motor fuel to be sold under the trademark; and (3) a lease of the premises on which the motor fuel is sold. *Id.* (citing 15 U.S.C. § 2801(1)(A)); *May-Som*, 869 F.2d at 922. Plaintiffs here do not dispute that they still use Exxon's trademark, continue to be supplied with Exxon fuel under the trademark, and continue to lease the premises at their retail stations. (2d Am. Compl. ¶ 7B) Thus, under plaintiffs' own allegations, there has been no constructive termination based on any breach of the essential elements of the franchise. *E.g.*, *Chestnut Hill*, 940 F.2d at 752 (no constructive termination where "all thirteen dealers continued to occupy the same service stations under the same leases; they continued to purchase Gulf brand gasoline under the same supply agreements; and they continued to do business under the same Gulf trademark."); *see also May-Som*, 869 F.2d at 922.[7]

## CONCLUSION

For all of these reasons, Exxon requests that this Court dismiss Counts II and III of the Second Amended Complaint.

---

[7] Plaintiffs' allegation that the assignment can constitute an "anticipatory nonrenewal" is likewise unavailing because "nonrenewal" claims under the PMPA are limited to "cases where either a notice [of nonrenewal] is given or an actual nonrenewal has taken place." *See Marcoux v. Shell Oil Prods. Co. LLC*, 524 F.3d 33, 48 (1st Cir. 2008) (rejecting constructive termination claim where there was no notice of nonrenewal). "The PMPA, after all, requires a franchisor to provide a notice of nonrenewal, 15 U.S.C. § 2805(c), and then provides a framework for the franchisee to seek preliminary relief on receipt of that notice." *Id.*; *Clark*, 137 F.3d at 394-95 (holding that dealer whose franchise had been assigned could not make "the threshold showing of an actual or constructive termination or nonrenewal" under the PMPA). Here, it is undisputed that Exxon has not issued a notice of non-renewal or otherwise non-renewed the plaintiffs' franchises.

Date: December 3, 2009 Respectfully submitted,

/s/
---
Maurice A. Bellan
Federal Bar No. 14390
ARENT FOX LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 30036

Mark S. Lillie, P.C.
Andrew A. Kassof, P.C.
A. Katrine Jakola
Joseph M. Russell
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654

*Counsel for Defendants ExxonMobil Oil Corporation and ExxonMobil Corporation*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLND
(SOUTHERN DIVISION)

| | |
|---|---|
| DUNCAN SERVICES, INC., et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 8:09-cv-02486-AW |
| v. ) | |
| ) | |
| EXXONMOBIL OIL CORPORATION, et al. ) | |
| ) | |
| Defendants. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day December, 2009, the foregoing Defendants' Memorandum in Support of Their Motion to Dismiss the White Oak Plaintiffs' Claims in the Second Amended Complaint (Counts I & II)) was filed using the CM/ECF system, which system will serve by electronic service the following participant-parties in the CM/ECF system:

> Harry C. Storm, Esq.
> Stuart A. Schwager, Esq.
> 3 Bethesda Metro Center
> Suite 460
> Bethesda, MD 20814
>
> Alphonse M. Alfano, Esq.
> Bassman, Mitchell & Alfano, Chartered
> 1707 L Street, N.W. – Suite 560
> Washington, D.C. 20036
>
> Jeffrey L. Leiter, Esq.
> Leiter & Cramer PLLC
> 1707 L Street, NW
> Suite 560
> Washington, DC 20036

Howard N. Berliner, Esq.
Berliner Law Firm, PLLC
2101 L Street, NW
Suite 1000
Washington, DC 20037

                          _____/s/_____
                          Maurice A. Bellan, Esq.