IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| DUNCAN SERVICES, INC., et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 8:09-cv-02486-AW |
| EXXONMOBIL OIL CORPORATION, et al., | ) |
| Defendants. | ) |

**DEFENDANT GTY MD LEASING, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE WHITE OAK PETROLEUM PLAINTIFFS' CLAIMS IN COUNTS III AND IV OF THE SECOND AMENDED COMPLAINT**

**I. INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and the parties' Stipulation and Order (Dkt. No. 51), defendant GTY MD Leasing, Inc. (hereinafter referred to as "Getty") files this Motion to Dismiss Counts III and IV of the Second Amended Complaint.

Defendants Getty, ExxonMobil Oil Corporation and ExxonMobil Corporation (hereinafter collectively referred to as "ExxonMobil"), and White Oak Petroleum, LLC (hereinafter referred to as "White Oak") were sued by a group of Maryland service station dealers (hereinafter referred to as "White Oak Dealers"), alleging that the sale of their service station properties and the assignment of their franchises by Exxon to White Oak and Getty violated their rights under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§2801-2806. The White Oak Dealers contend that their franchise agreements have been actually or

1

constructively terminated and their franchise relationships have been anticipatorily non-renewed.[1]

Getty is unaware of any disputed factual allegations set forth in the Second Amended Complaint. On September 25, 2009, ExxonMobil assigned its franchise agreements with the White Oak Dealers to White Oak and the station premises were sold to Getty and leased back to White Oak. 2d Am. Compl. ¶ 17. White Oak is a distributor through which the White Oak Dealers are now supplied with Exxon-branded gasoline. 2d Am. Compl. ¶¶ 17, 23. In addition to being supplied with Exxon-branded gasoline, the White Oak Dealers continue to use ExxonMobil's trademark and continue to lease their station premises, pursuant to the terms of their assigned franchise agreements. 2d Am. Compl. ¶ 17.

The plaintiffs assert in their Second Amended Complaint common law claims under Maryland law against Getty (and White Oak) in Count III (civil conspiracy) and Count IV (unjust enrichment). The plaintiffs allege that Getty, White Oak and ExxonMobil participated in a civil conspiracy to violate the White Oak Dealer's PMPA rights, and that the ultimate sale of their service station properties to Getty and subsequent leaseback to White Oak has unjustly enriched Getty and White Oak in a way that justifies the imposition of a "constructive trust" on these service station properties.

As discussed below, Counts III and IV of the Second Amended Complaint should be dismissed, because the plaintiffs fail to state a claim upon which relief can be granted as to either

---

[1] The plaintiffs' original complaint alleged that ExxonMobil's impending sale of its service station properties in the State of Maryland would result in a "constructive termination" of the plaintiffs' franchises under the PMPA. On November 6, 2009, this Court granted ExxonMobil's motion to dismiss Counts I and II of the Second Amended Complaint as to all plaintiffs whose service stations were not yet sold. The plaintiffs have filed a motion for reconsideration. At the present time, this case is limited to the White Oak Dealers – that is, those certain plaintiffs whose stations were sold by ExxonMobil to White Oak and conveyed to Getty and whose gasoline supply agreements were assigned by ExxonMobil to White Oak.

the civil conspiracy or unjust enrichment claims. Moreover, even if these Maryland state law claims were properly asserted, they are preempted by the PMPA.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff is required to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). "[Although] legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal,* at 1950. To survive a Rule 12(b)(6) motion to dismiss, factual allegations in the complaint "must be enough to raise a right to relief above the speculative level" and cross the line between "possibility" and "plausibility" of entitlement to relief. *Twombly,* at 1965-66. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the . . . court to draw on its judicial experience and common sense." *Iqbal,* at 1950.

The Court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff. *See Lambeth v. Bd. of Comm'rs of Davidson County*, 407 F.3d 266, 268 (4th Cir.2005). Nevertheless, the Court is not required to accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265(1986), conclusory allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir.1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences," *Veney v. Wyche,* 293 F.3d 726 (4th Cir.2002).

A motion to dismiss under Rule 12(b)(6) should be granted if it appears beyond a doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989). The issue on a motion to dismiss "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1979).

**III. ARGUMENT**

**A. The Plaintiffs Fail to State a Claim for Civil Conspiracy**

In Count III of the Second Amended Complaint, the plaintiffs allege that there was an agreement "and thus a conspiracy between ExxonMobil, White Oak Petroleum and Getty to accomplish an unlawful objective as described herein, and for which ExxonMobil, White Oak Petroleum and Getty have legal responsibility." 2d Am. Compl. ¶38A. The only allegation of unlawful activity set forth by the plaintiffs in Count III is ExxonMobil's violation of the PMPA:

> ExxonMobil has without grounds or required notification, terminated its franchise and franchise relationship unlawfully with each of the White Oak Transaction Plaintiffs and has further through the sale and transfer of the stations to White Oak Petroleum and Getty, and the transfer of the franchises, anticipatorily non-renewed the franchises and franchise relationships with the White Oak Transaction Plaintiffs.

2d Am. Compl. ¶At 40.[2] By alleging a civil conspiracy in Count III, the White Oak Dealers seek to hold Getty and White Oak vicariously liable for ExxonMobil's alleged violation of the PMPA.

The civil conspiracy claim in Count III against Getty should be dismissed because Maryland law does not recognize civil conspiracy to violate a contract or a statute as an independent cause of action or as a means of imposing vicarious liability. Moreover, even if a

---

[2] ExxonMobil, in its motion to dismiss the Second Amended Complaint as to the White Oak Dealers, also seeks the dismissal of Count II (breach of contract), which includes ¶¶31-34. The plaintiffs did not incorporate the allegations of these paragraphs in Count II in either Count III or Count IV.

4

separate cause of action did exist under Maryland law, it was not properly plead by the plaintiffs and it would be preempted by the PMPA.

In Maryland, "[t]o recover damages for civil conspiracy, it must be shown that there was an agreement by at least two persons to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, and that the act or means used resulted in damage to the plaintiff." Maryland Pattern Jury Instructions Civil § 7:6; *see Columbia Real Estate Title Ins. Co. v. Caruso*, 39 Md.App. 282, 384 A.2d 468, 472-73 (Md.Ct.Spec.App.1978). The Second Amended Complaint is devoid of any factual allegations that Getty agreed with ExxonMobil and White Oak to terminate the PMPA franchises or non-renew the franchise relationships of the White Oak Dealers.

Further, the plaintiffs have failed to allege in the Second Amended Complaint a cognizable tort claim against ExxonMobil under Maryland law. This Court cannot recognize a civil conspiracy by Getty in this action in the absence of an underlying tort caused by ExxonMobil, because civil conspiracy is recognized by Maryland courts as a product of tort law. *Hale Trucks of Maryland, LLC v. Volvo Trucks North America, Inc.*, 224 F.Supp.2d 1010, 1021 (D. Md. 2002) *citing Alleco, Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 665 A.2d 1038, 1044-45 (1995). Moreover, civil conspiracy has been characterized as a "parasite tort" – that is, it is not a separate or independent tort capable of standing on its own as a cause of action or sustaining an award of damages in the absence of other tortious injuries to the plaintiff. *Alleco, Inc. v. Harry & Jeanette Weinberg Foundation, Inc*., 340 Md. 176, 190, 665 A.2d 1038, 1044-45 (1995); *Alexander & Alexander, Inc. v. B. Dixon Evander & Associates, Inc.*, 336 Md. 635, 645, 650 A.2d 260 (1994). Thus, if the plaintiffs have failed to allege an underlying cognizable tort claim against ExxonMobil under Maryland law, then this Court cannot recognize a civil conspiracy on the part of Getty. *See*

*Domchik v. Greenbelt Services*, 200 Md. 36, 42, 87 A.2d 831, 834 (1952), *cited in Alleco, Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 190, 665 A.2d 1038, 1045 (1995).

Moreover, a civil conspiracy claim requires that the underlying tort "be set forth in a separate count." *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 360 at n.6, 758 A.2d 95 (2000); *NRT Mid-Atlantic v. Innovative Properties, Inc.*, 144 Md. App. 263 287, 797 A.2d 824 (2002). The plaintiffs do not set forth allegations of any tort by ExxonMobil in a separate count in the Second Amended Complaint. In the absence of a legally sufficient tort claim against one of the conspiring parties—that is, ExxonMobil -- the civil conspiracy cause of action must be dismissed as to Getty. *Kramer v. Mayor and City Council of Baltimore*, 124 Md.App. at 642, 723 A.2d at 542; *Christian v. Minnesota Mining & Manufacturing Co.*, 126 F. Supp.2d 951, 959 (D.Md. 2001).

The plaintiffs in Count III have not alleged any tortious conduct by ExxonMobil that has been aided and abetted by Getty; rather, they claim ExxonMobil has breached its contracts with the White Oak Dealers (Count II) and has violated the PMPA (Count III). A conspiracy to terminate a contract is not a "viable claim" in Maryland. *Hale Trucks of Maryland,* 224 F.Supp.2d at 1021. Thus, in the absence of allegations that ExxonMobil committed a tort, the plaintiffs cannot maintain a claim of civil conspiracy as a means of imposing vicarious liability on Getty.

Further, the plaintiffs have made no assertion in the Second Amended Complaint that the assignment of their franchises and franchise relationship by ExxonMobil to Getty and White Oak constitutes tortious interference with their lawful business relationships. The required elements of this tort in Maryland are: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiff in [his] lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Rossignol v. Voorhaar*, 321 F.Supp.2d 642, 648 (D.Md., 2004);

6

*Natural Design, Inc. v. Rouse Co.,* 302 Md. 47, 70-71, 485 A.2d 663 (1984) (quoting *Willner v. Silverman,* 109 Md. 341, 355, 71 A. 962 (1909)).

For the same reason, a claim for civil conspiracy cannot be based on the violation of a statute, such as the PMPA. *Baltimore-Washington Telephone v. Hot Leads Co.,* 584 F.Supp.2d 736, 745 (D. Md., 2008); *Robb v. Wancowicz,* 199 Md.App. 531, 705 A.2d 125 (1998). The plaintiffs' allegation in Count III that Getty and White Oak aided and abetted ExxonMobil in a violation of the PMPA requires a different analysis. "[W]hen Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abetters." *Baltimore-Washington Telephone v. Hot Leads Co.*, 584 F. Supp.2d at 745, *citing Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 182, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). Civil aiding and abetting liability is determined on a statute-by-statute basis. Id. at 181-82, 114 S.Ct. 1439. Further, the Supreme Court noted in *Central Bank* that "Congress [knows] how to impose aiding and abetting liability when it [chooses] to do so."10 Id. at 176, 182-83, 114 S.Ct. 1439.

It is clear that the Congressional intent did not include aiding and abetting liability in the enforcement provisions of the PMPA. Congress in 15 U.S.C. §2805(a) provided that a dealer could bring an action only against a "franchisor" – that is, ExxonMobil. Getty is not a "franchisor" as set forth in 15 U.S.C. §2801(1)(A)(3). In light of the plain language of the PMPA, and the holding in *Central Bank*, this Court should not extend liability to include Getty under the PMPA for aiding and abetting.

For the foregoing reasons, the plaintiffs have failed to plead properly a claim of civil conspiracy against Getty, and Getty's motion to dismiss Count III of the Second Amended Complaint should be granted.

### B.  The PMPA Preempts Any Common Law Claim of Civil Conspiracy

Even if the Court were to find the plaintiffs' pleading in Count III sufficient to survive this Rule 12(b)(6) motion on the basis of a civil conspiracy under Maryland common law, such finding is preempted by the PMPA.  PMPA §2806 expressly preempts all state law "with respect to" termination of a franchise and nonrenewal of a franchise relationship:

> To the extent that any provision of this title applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect to) of any franchise relationship, no state or any political subdivision thereof may adopt, enforce or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereto) *with respect* to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this title.

15 U.S.C. § 2806(a)(emphasis added).

The United States Court of Appeals for the Fourth Circuit has broadly construed "with respect to" and the preemptive scope of the PMPA.  *See Jiminez v. BP Oil, Inc.*, 853 F.2d 268, 273-74 (4th Cir. 1988); *Mobil Oil Corp. v. Virginia Gasoline Marketers and Auto Repair Ass'n*, 34 F.3d 220, 224 (4th Cir. 1994).  The PMPA "preempts any provision of any [state] law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination." *Jiminez v. BP Oil, Inc., et al.*, 853 F.2d 268, 273 n.1 (4th Cir. 1988).

In the view of the Fourth Circuit, any state law that provides different grounds for termination or nonrenewal or which alters the effects of a termination or nonrenewal is preempted

8

by the PMPA. *Jiminez*, 853 F.2d at 273; *Mobil Oil Corporation v. Virginia Gasoline Marketers*, 34 F.3d at 224. The "ground/effects test" set forth by the Fourth Circuit in *Jiminez* includes a determination of whether a state law imposes "a remedy for termination not 'the same as' those set forth in the PMPA." *Mobil Oil Corporation v. Virginia Gasoline Markerters,* at 225.

The Federal courts have also held that the PMPA preempts state common law. *See, e.g., Huth v. B.P. Oil, Inc.*, 555 F.Supp. 191 (D.Md. 183) (common law fraud claims preempted); *Clark v. BP Oil Co.*, 930 F.Supp. 1196 (E.D. Tenn. 1996) (state claims, including civil conspiracy claim, are preempted by the PMPA), *aff'd Clark v. BP Oil Co.*, 137 F.3d 386, 395-96 (6th Cir. 1998; *Karak, et al. v. Bursaw Oil Corp., et al.*, 147 F. Supp. 2d at 12 (D.Mass. 2001)(PMPA preempts any state statutory or common law); *Glenside West Corp. v. Exxon Co. USA*, 761 F. Supp. 1100, 1108 (D.N.J. 1991)(statutory and common law involving wrongful terminations are preempted by the PMPA).

The *Clark v. BP Oil Co.* case cited above is instructive in evaluating Getty's motion to dismiss, because the court there refused to include the distributor-assignee (similar to White Oak) in a civil conspiracy to violate the PMPA. The court determined that, if the refiner-assignor (similar to ExxonMobil) did not violate any of the plaintiff's PMPA rights, then it could not find that the distributor-assignee conspired to deprive the plaintiff of any PMPA right. The court also determined that, if it found that the refiner-assignor did violate one or more of the plaintiff's PMPA rights, then the plaintiff's remedies were to be found in the PMPA and were not to be modified or increased by reference to any state-law civil conspiracy theory. *Clark v. BP Oil Co.,* 930 F.Supp. at 1202. The United States Court of Appeals for the Sixth Circuit subsequently affirmed the trial court. *Clark v. BP Oil Co.,* 137 F.3d at 395-96.

Accordingly, because liability under the PMPA is exclusive to the franchisor under 15 U.S.C. §2805(a), the plaintiffs attempt here to use civil conspiracy to impose vicarious liability on either Getty or White Oak for ExxonMobil's alleged PMPA violation is preempted. This Court should not expand the scope of the PMPA to impose liability on either Getty or White Oak for ExxonMobil's alleged PMPA violations in Count III. Count III, therefore, should be dismissed.

### C. The Plaintiffs Fail to State a Claim for Unjust Enrichment (Count IV)

In Count IV of the Second Amend Complaint, the plaintiffs allege that Getty and White Oak have been "unlawfully and unjustly enriched through the acquisition of interest in the White Oak Transaction stations that properly belong to plaintiffs." 2d Am. Compl. ¶47. The plaintiffs ask the Court to put the White Oak Transaction stations into a constructive trust for the plaintiffs' benefit. 2d Am. Compl. ¶47.A.

Count IV should be dismissed because the plaintiffs have not properly plead the elements of an unjust enrichment claim in Maryland. The elements of an unjust enrichment claim in Maryland are: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and, (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value. *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151, 757 A.2d 108, 113 (2000); *County Comm'rs v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 95 n. 7, 747 A.2d 600, 607 n. 7 (2000) (quoting *Everhart v. Miles*, 47 Md.App. 131, 136, 422 A.2d 28, 31 (1980)).

The plaintiffs in Count IV have not set forth the benefit that any one of the White Oak Dealers has conferred upon Getty and White Oak to support a claim of unjust enrichment. The plaintiffs' only allegations of unjust enrichment are two non-factual, conclusory statements that:

> Defendants acquired their respective interests in the White Oak Transaction
> stations under circumstances rendering it inequitable for them to retain

> such interests. In particular, such interests were acquired in derogation of plaintiffs' rights under the federal PMPA.

2d. Am. Compl. ¶46.

> Defendants have been unlawfully and unjustly enriched through acquisition of interest in the White Oak Transaction stations that properly belong to plaintiffs.

2d. Am. Compl. ¶47. Thus, the plaintiffs have plead no specific facts, such as the description of the benefit conferred on Getty and White Oak and how it was provided, to support the first element in a claim for unjust enrichment under Maryland law.

Similarly, the plaintiffs in Count IV have not set forth any facts to support a conclusion that either Getty or White Oak had an appreciation or knowledge benefit, and, importantly, these defendants accepted or retained the benefit under such circumstances as to make it inequitable for them to retain the benefit without the payment of its value. For example, the plaintiffs in Count IV make no allegation that White Oak did not pay ExxonMobil fair market value for the service station properties or that Getty is charging above-market rentals to White Oak. The plaintiffs improperly base their claim for unjust enrichment on the two above-cite conclusory statements cited *supra* without the necessary recital of facts to support each element of an unjust enrichment claim under Maryland law.

As cited *supra* in *Iqbal*, the Supreme Court stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to `state a claim to relief that is plausible on its face.'" *Iqbal,* at 1949 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard thus requires the plaintiffs here to demonstrate more than "a sheer possibility" that any of the defendants acted unlawfully. *Id.* Instead, the plaintiffs are required to articulate facts, when accepted as true, "show" that they have stated a claim entitling them to relief (*i.e.,* the "plausibility of `entitlement to relief.'" ) *Id.* (quoting *Twombly,* 550 U.S. at 557).

To emphasize the Federal Rules' requirements for stating claims that are warranted and therefore form a plausible basis for relief, the Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. To discount such unadorned conclusory allegations, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. This approach recognizes that "naked assertions" of wrongdoing necessitate some "factual enhancement" within the complaint to cross "the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted).

Accordingly, to survive a motion to dismiss, the plaintiffs in Count IV must allege facts sufficient to establish each element of the unjust enrichment claim. They have not and have failed to state a claim upon which relief can be granted under Count IV, and this Court should dismiss Count IV as to Getty.

## IV. CONCLUSION

Based on the foregoing, Getty respectfully requests that its motion to dismiss should be granted as to Counts III and IV of the Second Amended Complaint.

Dated: December 3, 2009                    Respectfully submitted,

_____/s/_____
Howard N. Berliner
Bar No. 28439
Berliner Law Firm, PLLC
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
Tel: (202) 530-8508
Fax: (202) 331-3101
berlinerfirm@comcast.net

                    _____/s/_____
Jeffrey L. Leiter
Bar No. 93890
Leiter & Cramer PLLC
1707 L Street, N.W., Suite 560
Washington, D.C. 20036
Tel: (202) 386-7670
Fax: (202) 386-7672
jll@leitercramer.com

*Counsel for Defendant*
*GTY MD Leasing, Inc.*