**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| DUNCAN SERVICES, INC., *et al.*, | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | *  Civil Action No. AW-09-2486 |
| | * |
| EXXONMOBIL OIL CORPORATION, *et al.*, | * |
| | * |
| Defendants. | * |
| | * |

**MEMORANDUM OPINION**

Sixty-five franchisees of ExxonMobil Oil Corporation and ExxonMobil Corporation who individually, or on behalf of entities they control, operate at least one retail service station in Maryland, brought this action against Defendants ExxonMobil Oil Corporation and ExxonMobil's affiliate ExxonMobil Corporation (collectively "Exxon Defendants" or "Exxon"), White Oak Petroleum, LLC ("White Oak"), and GTY MD Leasing, Inc. ("Getty") on September 22, 2009. In their Second Amended Complaint, Plaintiffs assert violations of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801-2806, breach of contract, and request the charge of a constructive trust on station properties. On November 6, 2009, the Court dismissed the fifty-two Plaintiffs whose franchises ExxonMobil had not yet assigned (hereinafter "Non-White Oak Transaction Plaintiffs"), on the ground that the injuries they alleged were too speculative. Currently pending before the Court is Plaintiffs' Motion for Reconsideration of that decision (Doc. No. 50), Defendants ExxonMobil Oil Corporation and ExxonMobil Corporation's Motion to Dismiss the White Oak Plaintiffs' Claims in the Second Amended Complaint (Doc. No. 56), Defendant GTY MD Leasing, Inc.'s Motion to Dismiss the White Oak Plaintiffs' Claims in Counts III and IV of the Second Amended Complaint (Doc. No. 57), and Defendant

White Oak Petroleum, LLC's Motion to Dismiss the Claims Against It (Doc. No. 54). The Court has reviewed the entire record with respect to the instant motions. The issues have been briefed and the Court does not believe a hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated below, the Court will GRANT Defendants ExxonMobil Oil Corporation and ExxonMobil Corporation's Motion to Dismiss the White Oak Plaintiffs' Claims in the Second Amended Complaint, GRANT Defendant GTY MD Leasing, Inc.'s Motion to Dismiss the White Oak Plaintiffs' Claims in Counts III and IV of the Second Amended Complaint, GRANT Defendant White Oak Petroleum, LLC's Motion to Dismiss the Claims Against It, and DENY Plaintiffs' Motion for Reconsideration.

## I.   FACTUAL BACKGROUND

The Court provided the facts and background of this case in its Memorandum Opinion and Order of November 6, 2009 (Docs. Nos. 48 & 49). The Court now merely notes that this case involves two groups of Plaintiffs—those whose franchises had already been assigned to distributor White Oak when Plaintiffs brought their Complaint (the Court will refer to this group generally as "Plaintiffs"), and those whose franchises had not yet been assigned when Plaintiffs brought their Complaint ("Non-White Oak Transaction Plaintiffs"). In their Second Amended Complaint, Plaintiffs assert violations of the PMPA (Count 1) and breach of contract (Count 2) against Exxon; violations of the PMPA (Count 3) against White Oak and Getty; and constructive trust (Count 4) against Getty. At issue in the Complaint are alleged violations of a uniform Franchise Agreement that all Plaintiffs signed.[1] All Defendants have moved to dismiss the claims against them.

---

[1] For the purpose of ruling on the instant motions to dismiss, the Court reviews the Franchise Agreements since the Plaintiffs explicitly rely on the Franchise Agreements in the Second Amended Complaint, and do not challenge their

On November 20, 2009, the Non-White Oak Transaction Plaintiffs moved the Court to reconsider its earlier decision dismissing them from the case. The Non-White Oak Transaction Plaintiffs explained that in the intervening period, the Exxon Defendants had revealed the identity of the assignee and announced definite plans to assign the franchises. On February 22, 2010, the Non-White Oak Transaction Plaintiffs filed a notice withdrawing the Motion for Reconsideration with respect to all but two franchisees—Razaa, Inc. and Saraniya Fuel Marketing Corporation, Inc. Additionally, in March, all parties submitted notices of supplemental authority, alerting the Court to the Supreme Court's ruling in *Mac's Shell Services v. Shell Oil Products Co. LLC*, 130 S. Ct. 1251 (2010).

## II.  EXXON'S MOTION TO DISMISS

### A.  Standard of Review

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In two recent cases, the United States Supreme Court clarified the standard applicable to Rule 12(b)(6) motions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Those cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."

---

authenticity. *See Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) ("The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint - lack of notice to the plaintiff - is dissipated '[w]here plaintiff has actual notice …and has relied upon these documents in framing the complaint.'") (citation omitted).

*Twombly*, 550 U.S. at 556 n.3 (2007). That showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In its determination, the Court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In addressing a motion to dismiss, a court should first review a complaint to determine what pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949-50. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Indeed, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Id.* at 1954. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

**B. Analysis**

Exxon Defendants move the Court to dismiss the Plaintiffs' claims that Exxon violated the PMPA and breached their contracts by assigning their franchises to White Oak and selling the station properties to White Oak, which sold them to Getty. Exxon Defendants argue that the Court should dismiss Plaintiffs' PMPA claim because Exxon's assignment of Plaintiffs' Franchise Agreements cannot constitute either a termination or non-renewal of the franchises

4

under the PMPA because Plaintiffs cannot allege a violation of a statutory element of a franchise, as required under *Mac's Shell*. 130 S. Ct. 1251 (2010). The Court agrees that since, under *Mac's Shell*, allegation of a violation of a statutory element of a franchise is a necessary element of a PMPA claim, and Plaintiffs fail to make such a showing, the Court must dismiss Plaintiffs' PMPA claim. Exxon Defendants also argue that the Court must dismiss Plaintiffs' breach of contract claim because Plaintiffs fail to specify what portion of the Franchise Agreement Exxon violated, and because the parties contracted to make the franchises freely assignable to any entity. Plaintiffs respond that the provision is invalid because it substantially alters Plaintiffs' risks and obligations and thus violates Maryland Commercial Law Section 2-210(2), Md. Code, Com. Law § 2-210(2) (2010). The Court agrees with Defendants that the free assignment provision of the contract controls, and that the latter statute does not prohibit parties from agreeing to make contracts freely assignable. Thus, the Court will dismiss Plaintiffs' breach of contract claim.

### 1) Count 1: PMPA Violation

The Court agrees with Exxon Defendants that their assignment of Plaintiffs' franchises to White Oak and their sale of the station properties to Getty does not violate the PMPA. As this Court previously observed, to access any relief under the PMPA, a franchisee "shall have the burden of proving the termination of the franchise or the nonrenewal of the franchise relationship." 15 U.S.C. § 2805(c). Since the Court's last decision in this case, and since the parties' briefings of the motions to dismiss, the Supreme Court has interpreted both the ordinary and technical meanings of this provision of the PMPA to give rise to a claim for violation of the PMPA only "if an agreement for the use of a trademark, purchase of motor fuel, or lease of a

premises is 'put [to] an end' or 'annul[ed] or destroy[ed].' Conduct that does not force an end to the franchise, in contrast, is not prohibited by the Act's plain terms." *Mac's Shell Serv. v. Shell Oil Prods. Co. LLC*, 130 S. Ct. 1251, 1257 (2010) (quoting *Webster's New International Dictionary* 2605 (2d ed. 1957)) (reversing First Circuit's holding that evidence of the elimination of a rent subsidy and a dramatic increase in rent paid could indicate a constructive termination under the PMPA, absent a violation of the statutory definition of franchise). Claims under the PMPA are thus limited to those instances that result in a breach of a statutory component of the franchise. Changes in the franchisor-franchisee relationship that do not result in termination of the franchise, but which violate state law, provide causes of action under state law, but not under the PMPA. *See id.* at 1259-60 ("Reading the Act to prohibit simple breaches of contract, however, would be inconsistent with the Act's limited purpose and would further expand federal law into a domain traditionally reserved for the States.").

It is clear that the assignment of the franchises to White Oak does not violate any statutory element of a franchise, and thus does not amount to actual or constructive termination. Plaintiffs do not dispute that they still use Exxon's trademark, still use Exxon's fuel, and continue to lease the same retail stations. Rather, Plaintiffs allege that the assignments violate the PMPA because they "breach the Franchise Agreements and System by increasing materially the burden or risk imposed on the Dealer Plaintiffs under such Franchise Agreements, and impair or materially eliminate their chance of obtaining return performance under such Franchise Agreements and System." (2d Am. Compl. ¶ 27.) Plaintiffs contend that the assignments constitute constructive termination because each assignment "(i) materially increases the plaintiff dealers' burdens and risks, (ii) breach[es] an express term of the franchise agreements, and (iii)

6

has resulted in the plaintiffs being unable to purchase their gasoline at the stipulated franchise price that was available from Exxon." (Doc. No. 60 at 3.) After Plaintiffs briefed this issue, however, the Supreme Court squarely rejected the contention that any changes outside the statutory definition of franchise give rise to a cause of action under the PMPA. *Mac's Shell*, 130 S. Ct. at 1257-1258 (rejecting the view that "the PMPA prohibits, not just unlawful terminations and nonrenewals, but also certain serious breaches of contract that do not cause an end to the franchise" as "ignor[ing] the Act's limited scope"). The *Mac's Shell* Court found, "[a]ny standard for identifying when a simple breach of contract amounts to a PMPA termination, when all three statutory elements remain operational, simply evades coherent formulation." *Id.* at 1260. The possibility of competition and increase in price of fuel are both insufficient to invoke the protections of the Act here, just as the loss of the subsidy in rent to the franchisee was insufficient to invoke the Act in *Mac's Shell*. *Id.* at 1261. Plaintiffs rely heavily on *Barnes v. Gulf Oil Corp.*, 795 F.2d 358, 360 (4th Cir. 1986) ("*Barnes I*"), for their argument that the changes here constitute constructive termination, but the Fourth Circuit decided *Barnes I* long before the Supreme Court's decision this term in *Mac's Shell*. To the extent the *Barnes I* Court remanded the case on the ground that the district court should have considered that the assignment at issue could have constituted constructive termination if the assignment violated state law, that position is inconsistent with the Supreme Court's recent holding in *Mac's Shell*. Invalidity of the assignment would not give rise to a possibility of constructive termination in this case.

Plaintiffs' argument that the PMPA Section 105(F)(1)(A) anti-waiver provision, 15 U.S.C. § 2805(F)(1), renders the Franchise Agreement's free assignment clause invalid is

7

irrelevant. Even if the Court invalidated the Franchise Agreement's free assignment provision on the ground that it violated the PMPA's anti-waiver provision, as Plaintiffs' suggest, the assignment would still not cause a violation of a statutory element of a franchise under the PMPA.

Finally, Plaintiffs contend that Exxon's sale of the station premises to White Oak, which then sold them to Getty, from which White Oak now leases them, constitutes a change in a statutory element of the franchise. Plaintiffs explain that they now sublease, rather than lease, the property. Plaintiffs emphasize that a sublease increases their risks and burdens and breaches the lease component of the franchise agreement. But, the Court does not believe that this change in status constitutes a breach of a statutory element of a franchise. The Supreme Court stated that constructive termination occurs when "lease of a premises is 'put [to] an end' or 'annul[ed] or destroy[ed].'" *Mac's Shell*, 130 S. Ct. at 1257 (quoting *Webster's New International Dictionary* 2605 (2d ed. 1957)). Here, Plaintiffs still lease the same property, and though their status with respect to the lease has changed, Plaintiffs do not deny that they still rent the property. Accordingly, the Court finds no constructive termination and thus no PMPA violation. As such, the Court will dismiss Count 1 of the Second Amended Complaint.

### 2) Count 2: Breach of contract

The Court also agrees with Exxon Defendants that Plaintiffs have not made out a claim for breach of contract. Exxon Defendants argue that 1) Plaintiffs have not identified any contractual provision Exxon breached and 2) Maryland Commercial Law Section 2-210(2) does not invalidate the Franchise Agreement's free assignment provision as the parties specifically contracted for free assignment, and thus the assignment to White Oak does not increase the

8

parties' risks or burdens.[2] Though the Franchise Agreements specifically state that the franchises are freely assignable, Plaintiffs contend that the assignments are invalid regardless, because "after the assignment White Oak has deviated from the course of performance/course of dealing under the contracts and increased the price of the motor fuel [], that the assignment relegated plaintiffs to a subtenant status which they previously did not occupy [] and that the assignment materially increased the dealers' risks and burdens and was therefore illegal []." (Doc. No. 60 at 7.) The Court believes that because the parties agreed to make the franchises freely assignable, they submitted to the risk that these events might come to pass, and thus that Plaintiffs have not shown a breach of contract.

"A breach of contract is a failure without legal excuse to perform any promise which forms the whole or part of a contract, and may be inferred from the 'refusal of a party to recognize the existence of a contract, or the doing of something inconsistent with its existence.'" *Weiss v. Sheet Metal Fabricators, Inc.*, 206 Md. 195, 203-204 (1955) (citations omitted). Exxon Defendants contend that Plaintiffs must identify a specific provision of the Franchise Agreement that Exxon Defendants violated in order to sustain a breach of contract claim. Plaintiffs, citing *Taylor v. Nationsbank, N.A.*, 776 A.2d 645 (Md. 1999), contend that they must only show that "defendant owed the plaintiff a contractual obligation and that defendant breached the obligation." (Doc. No. 60 at 6.)

---

[2] In a footnote Exxon Defendants also argue that the PMPA preempts the breach of contract claim, and thus the latter should be dismissed, but in *Mac's Shell* the Supreme Court clearly stated that the PMPA does not preempt breach of contract claims that do not relate to termination or nonrenewal of a franchise. *Mac's Shell Serv. v. Shell Oil Prods. Co. LLC*, 130 S. Ct. 1251, 1260 (2010) ("The pre-emptive scope of the PMPA is limited: The Act pre-empts only those state or local laws that govern the termination of petroleum franchises or the nonrenewal of petroleum franchise relationships.")

Broadly interpreting the minimum requisite showings for a breach of contract claim, the Court first turns to the question of whether Exxon may have breached the Franchise Agreement in any way in assigning the franchises to White Oak. There is no dispute that the Franchise Agreement provides that the franchises are freely assignable. The Agreement states:

> 12.7 <u>Assignment by ExxonMobil</u>. This Agreement shall inure to the benefit of ExxonMobil, its successors, and assigns. ExxonMobil may transfer or assign all or part of its rights or interest in this Agreement, or delegate all or part of its duties or obligations under this Agreement, without restriction, to any person or entity.
>
> . . .
>
> Franchise Dealer acknowledges that:
>
> (a) An assignment or delegation by ExxonMobil may impact Franchise Dealer's rights and obligations under this Agreement to the extent that an assignee or delegate has policies or programs that differ from ExxonMobil's policies and programs;
>
> (b) This impact is contemplated by the Parties under this Agreement;
>
> . . .

(Doc. No. 33, Ex. A § 12.7.) But, Plaintiffs contend that this free assignment provision is invalid under Maryland law because it materially changes the risks and burdens of the parties. The Maryland Commercial Code Section 2-210(2) provides: "[u]nless otherwise agreed all rights of either seller or buyer can be assigned except where the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on him by his contract, or impair materially his chance of obtaining return performance." Md. Code Ann., Com. Law § 2-210(1)-(2) (2010); *see also Korangy*, 84 F. Supp. 2d at 665. Plaintiffs note that the Fourth Circuit has found increased burdens on a gas station franchisee following an assignment may violate state contract law. *See Barnes I*, 795 F.2d at 360 (interpreting Virginia Code Section 8.2-

10

210(2), which is nearly identical to Maryland Commercial Law Section 2-210(2), and finding plaintiff could possibly show invalid assignment if she could prove the assignment has increased her burdens). Plaintiffs allege that as a result of the assignment (1) they will lose the protection of Maryland's Retail Divorcement Statute ("Maryland Divorcement Statute"), Md. Code Ann., Bus. Reg. § 10-311(a), and thus be subject to competition from their fuel supplier; and (2) they will lose the benefit of participation in the ExxonMobil franchise system and fuel pricing structure.

The Court agrees franchisees face an increased risk of competition in light of the fact that White Oak is a distributor that is free to compete with the franchisees under the Maryland Divorcement Statute, whereas Exxon, as a refiner, was barred from so doing. But the Court believes Plaintiffs agreed to submit to this possibility when they signed the Franchise Agreements. The franchise agreement at issue in *Korangy*, which that court held the defendant refiner might have breached in assigning the franchises to distributors, specifically limited assignment to any refiner-affiliate, and thus the court deemed an assignment to a non-refiner-affiliate as potentially an alteration of the risks and burdens of the parties. *Korangy*, 84 F. Supp. 2d at 665 (finding the provision of the franchise agreement relating to assignment "ambiguous"). The instant Franchise Agreement, unlike that at issue in *Korangy*, clearly places no limitation on assignment, and thus an assignment to a distributor here does not pose the same alteration of the risks and burdens as the assignment at issue in *Korangy* did. Moreover, *Korangy* certainly does not stand for the proposition that parties cannot specifically contract for free assignment. In fact, other courts have found that they may. This Court's decision is consistent with the Seventh Circuit's rejection of plaintiff dealers' assertion that assignments would violate

the terms of the dealer supply agreements in *Beachler v. Amoco Oil Co.*, 112 F.3d 902, 907-08 (7th Cir. 1997). The Seventh Circuit found that "another provision plainly contemplates that the dealer supply agreements may be assigned by Amoco to jobbers," because that provision stated, much like the provision in this case, that, "'If this Agreement is assigned by Amoco to an Amoco jobber, the prices to be paid by [the] Dealer for motor fuel and other products hereunder shall be as established by said jobber.'" *Beachler*, 112 F.3d at 907 (alteration in original) (finding parties agreed there would be no limitations on refiner's right of assignment).

The Court believes that the clear agreement of the parties to make the contract freely assignable controls, and no inquiry into the potential increase in burdens prompted by the assignment is necessary. The Court agrees with Exxon Defendants that Plaintiffs have not identified sufficient alleged violations of contractual obligations to sustain a breach of contract claim.

Plaintiffs also fail to show that the change in fuel price, course of dealing, and change in lease status, were not changes contemplated in the Franchise Agreement. The increase in motor fuel price cannot sustain a contract violation claim because there is no provision in the agreement that stipulates fuel price, but rather, to the contrary, the Franchise Agreement contains an open price fuel term, which provides, fuel prices "are subject to change by ExxonMobil at any time and without notice." (Doc. No. 33, Ex. A § 2.2.) S*ee May-Som Gulf, Inc. v. Chevron U.S.A., Inc.*, 869 F.2d 917, 925 (6th Cir. Ohio 1989) (affirming grant of summary judgment based in part on finding no contractual burden increase caused by refiner's assignment of franchises to distributor in violation of state law, because "'motor fuel supply contracts do not state a specific price at which fuel will be sold to dealers,' and . . . plaintiffs' price increase allegations could not

12

constitute a contractual burden."). Next, Plaintiffs' contention that Exxon Defendants breached the contract by selling the stations to White Oak, which in turn sold them to Getty, is unsupported by the Lease Provisions to the Franchise Agreement ("Lease Provisions"). The Lease Provisions provide:

> 1.5 <u>Subordination</u>. This lease and all rights of Franchise Dealer under this Lease, the Agreement and all related and supplemental agreements are subject and subordinate in all respects to all existing and future:
>
> (a) ground leases, overriding leases and underlying leases of all, or any portion of, the Marketing Premises now or hereafter existing.

(Doc. No. 15, Ex. A at 45 § 1.5.) Thus, the Franchise Agreement clearly contemplates that the lease could be subject to an overriding lease, even one not existing at the time of contract formation. Thus Plaintiffs have not shown a viable claim for breach of contract on this basis, nor on any other, and the Court will dismiss this claim.

## III. GETTY AND WHITE OAK'S MOTIONS TO DISMISS

Defendants Getty and White Oak move to dismiss the claims against them—civil conspiracy under Count 3 and constructive trust under Count 4. The Court believes that Plaintiffs have failed to allege facts sufficient to support claims against Defendants Getty and White Oak, and will thus dismiss the claims against them.

First, Plaintiffs seek to hold Defendants Getty and White Oak vicariously liable for ExxonMobil's alleged violation of the PMPA, by claiming the Defendants engaged in a civil conspiracy to violate the PMPA. The only allegation of unlawful activity Plaintiffs set forth in Count 3 is:

> ExxonMobil has without grounds or required notification, terminated its franchise and franchise relationship unlawfully with each of the White Oak Transaction Plaintiffs and has further through the sale and transfer of the stations to White Oak Petroleum and

13

> Getty, and the transfer of the franchises, anticipatorily non-renewed the franchises and franchise relationships with the White Oak Transaction Plaintiffs.

(2d Am. Compl. ¶ 40.) This Count thus appears to be premised on Exxon's alleged PMPA violation. As the Court has found that Exxon Defendants did not violate the PMPA or breach their contracts when they assigned the franchises, there is no basis for vicarious liability for White Oak or Getty for violating the PMPA or breaching their contracts. Defendants Getty and White Oak additionally argue that Plaintiffs have not pled sufficient facts to make out a claim of civil conspiracy, as such a claim must include "an agreement by at least two persons to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal . . ." *Columbia Real Estate Title Ins. Co. v. Caruso*, 384 A.2d 468, 472-73 (Md. Ct. Spec. App. 1978). Additionally, White Oak and Getty contend that Maryland courts only recognize civil conspiracies that are based on an underlying tort, not on an underlying contractual breach of statutory violation. Finally, White Oak and Getty also contend that the PMPA preempts the civil conspiracy claims. Plaintiffs respond that White Oak and Getty are necessary parties to the litigation since if the Court finds the assignment and sale-leaseback transaction violated the PMPA or the Franchise Agreement, the Court would secure relief from White Oak and Getty. As the Court has dismissed Counts 1 and 2 of the Complaint, and Count 3 is based on those Counts, there is no longer any basis for Count 3, and accordingly the court will dismiss it, without addressing any of the alternative arguments Defendants White Oak and Getty make.

Next, Defendants Getty and White Oak move the Court to dismiss Plaintiffs' demand for imposition of a constructive trust on the properties leased by White Oak from Getty. Defendants contend that to secure the remedy of a constructive trust, plaintiffs must show a constructive trust is warranted to prevent unjust enrichment. Defendants insist that a claim for a constructive trust

cannot stand apart from a claim for unjust enrichment. *Washington Suburban Sanitary Commission*, decided after the case Plaintiffs rely on, provides, "'[t]he constructive trust, like its counterpart remedies 'at law,' is a remedy for unjust enrichment.' The remedy 'is no longer limited to misconduct cases; it redresses unjust enrichment, not wrongdoing.'" *Washington Suburban Sanitary Comm'n v. Utilities Inc.*, 365 Md. 1, 39 (2001) (quoting 1 Dobbs, Law of Remedies § 4.3(2), at 597 (1993) (footnote omitted)). Defendants Getty and White Oak ask the Court to dismiss this constructive trust claim on the ground that Plaintiffs have not pled the elements necessary to make out a claim of unjust enrichment, which they argue is a necessary preliminary claim to secure the remedy of a constructive trust. Unjust enrichment occurs when "'[a] person who receives a benefit by reason of an infringement of another person's interest, or of loss suffered by the other, owes restitution to him in the manner and amount necessary to prevent unjust enrichment.'" *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 152 (2000) (quoting Restatement (Second) of Restitution § 1 (Tentative Draft No. 1, 1983) (Tent. Restatement)). Generally, courts require that a party making out a claim for unjust enrichment show:

> "'1. A benefit conferred upon the defendant by the plaintiff;
>
> "'2. An appreciation or knowledge by the defendant of the benefit; and
>
> "'3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.'"

*Berry & Gould*, 360 Md. at 152 (quoting *County Comm'rs v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 n.7 (Md. 2000) (internal citations omitted)). Defendant Getty contends that Plaintiffs have not alleged facts sufficient to support a conclusion that either Getty or White Oak had an appreciation of a benefit, nor have Plaintiffs shown that Defendants accepted or retained

15

such a benefit under circumstances making it inequitable for them to retain the benefits without the payment of its value. (Doc. No. 57 at 11.)

Plaintiffs respond that Maryland courts do recognize constructive trust claims that are independent of unjust enrichment claims, and do not require wrongdoing by the party against which the constructive trust will be imposed. Plaintiffs cite *Korangy* for this proposition, which provides: "on at least three occasions, Maryland courts have analyzed a plaintiff's constructive trust claim without acknowledging any other cause of action raised by the plaintiff. . . . A court need only determine which party has 'a sufficiently higher equitable call' to the property." *Korangy v. Mobil Oil Corp.*, 84 F. Supp. 2d 660, 667 (D. Md. 2000) (citing *See Wimmer v. Wimmer*, 287 Md. 663, 414 A.2d 1254 (1980); *Springer v. Springer*, 144 Md. 465, 125 A. 162 (1924); *Starleper v. Hamilton*, 106 Md. App. 632, 666 A.2d 867 (Md. Ct. Spec. App. 1995)).

The Court finds that Plaintiffs fall short of making the requisite showing for either a claim of unjust enrichment, or a demonstration of "a sufficiently higher equitable call." *Korangy*, 84 F. Supp. 2d at 667. As the Court has found that the assignment of the franchises to White Oak and leases to Getty did not constitute a violation of either the PMPA or contractual obligations, the Court does not believe Plaintiffs have alleged facts that indicate it would be inequitable for White Oak to retain the franchises, nor Getty the station properties. Accordingly, the Court will dismiss Count 4 of the Second Amended Complaint.

## IV.     PLAINTIFFS' MOTION FOR RECONSIDERATION

Two Non-White Oak Transaction Plaintiffs move the Court to reconsider its decision of November 6, 2009 (Docs. Nos. 48 & 49), dismissing the claims of the Non-White Oak Transaction Plaintiffs and denying Plaintiffs' Motion for a Temporary Restraining Order and

Preliminary Injunction. These Plaintiffs contend that reconsideration is warranted in light of the new information that Exxon has now contracted with a non-refiner purchaser to sell the Plaintiffs' franchises, and has given Plaintiffs notice of the assignment. Exxon Defendants respond that the mere identity of the party to which Exxon will assign the franchises is insufficient to establish a claim for constructive termination or breach of contract. In light of the Court's analysis above, even if the Court were to find the future assignment sufficiently definite to warrant reconsideration, the Court would uphold its dismissal of Plaintiffs' claims. Accordingly the Court will deny the motion for reconsideration.

Reconsiderations of final judgments are appropriate only "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Stanton*, 994 F.2d 1076, 1081 (4th Cir. 2002). Plaintiffs move for reconsideration under Federal Rule of Civil Procedure 59(e), contending that the Court should correct its decision, because Plaintiffs present new evidence that was not previously available, and it is necessary to prevent injustice. Plaintiffs now present evidence of who the assignee will be and evidence of notice of the assignment. On November 16, 2009, ExxonMobil, via teleconference, informed its dealers that it had contracted to sell its remaining franchises in Maryland to Southside Oil Company ("Southside"), a non-refiner distributor. Plaintiffs characterize Southside as "a non-refiner with no Maryland presence or experience who operates stations with company employees and who has indicated an intention to operate with commissioned agents." (Doc. No. 50 at 5.) Plaintiffs argue that this planned assignment is invalid under state law because it will significantly change the risks and burdens the franchisees face, as Maryland's Divorcement Statute would not protect it from competition

17

from a distributor fuel supplier such as Southside. Plaintiffs conclude that the Court should enjoin Exxon from conveying the Non-White Oak dealers' station properties and assigning their franchises while this action is pending.

Defendants contend that though the assignee has now been identified, the assignment remains merely a potential assignment, and that Plaintiffs still cannot show any actual change or injury that would constitute constructive termination. Moreover, Defendants argue, the possibility that the franchises will be assigned to Southside, that Southside may use commissioned agents and operate company stores, and that the dealers' relationship with Southside may be different than their current relationship with Exxon cannot constitute such an increased risk of burdens so as to render the assignment invalid. Defendants distinguish *Korangy* on the ground that the assignment in that case had already occurred, that Franchise Agreement permitted assignment only to a Mobil affiliate, whereas the instant Franchise Agreement explicitly permits assignment to any entity, and the *Korangy* distributor already operated competitive stations, whereas Plaintiffs only assert that Southside may someday operate competitive stations in Maryland. *See Korangy v. Mobil Oil Corp.*, 84 F. Supp. 2d 660 (D. Md. 2000).

In light of the Court's determination that the completed transaction does not constitute a constructive termination under *Mac's Shell*, 130 S. Ct. 1251 (2010), since there is no supported allegation of a violation of a statutory element of a franchise, and that the that the assignment does not constitute a breach of contract as the free assignment clause contemplates assignment to a non-refiner, the new evidence regarding the assignee's identity and the existence of a contract for assignment does not sway the Court's ultimate decision. Thus the court declines to reconsider

its prior decision, and also declines to opine on whether the identity of the assignee would constitute sufficient new evidence to warrant reconsideration of the Court's original decision.

## V. CONCLUSION

For the foregoing reasons, the Court will GRANT Defendants ExxonMobil Oil Corporation and ExxonMobil Corporation's Motion to Dismiss the White Oak Plaintiffs' Claims in the Second Amended Complaint, GRANT Defendant GTY MD Leasing, Inc.'s Motion to Dismiss the White Oak Plaintiffs' Claims in Counts III and IV of the Second Amended Complaint, GRANT Defendant White Oak Petroleum, LLC's Motion to Dismiss the Claims Against It, and DENY Plaintiffs' Motion for Reconsideration. A separate Order will follow.

July 12, 2010

/s/
Alexander Williams, Jr.
United States District Judge